# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### JUNE SESSION, 1999

FILED

July 28, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

STATE OF TENNESSEE,    )
    )    No. 03C01-9810-CR-00346
    Appellee    )
    )    HAMILTON COUNTY
vs.    )
    )    Hon. Stephen M. Bevil, Judge
CHESTER LEBRON BENNETT, )
    )    (Sentencing)
    Appellant    )

For the Appellant:

**Ardena J. Garth**
District Public Defender

**Donna Robinson Miller**
Asst. Public Defender
701 Cherry Street, Suite 300
Chattanooga, TN  37402

For the Appellee:

**Paul G. Summers**
Attorney General and Reporter

**Erik W. Daab**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

**William H. Cox III**
District Attorney General

**Claire H. Brant**
Asst. District Attomey General
600 Market Street, Cts. Bldg.
Chattanooga, TN  37402

OPINION FILED: _____

REVERSED AND REMANDED

**David G. Hayes**
Judge

## OPINION

The appellant, Chester LeBron Bennett, pled guilty to five counts of criminal exposure to HIV (Human Immunodeficiency Virus), a class C felony. See Tenn. Code Ann. § 39-13-109(a)(1) (1997).[1] The plea agreement provided that the appellant's sentences would run concurrently; however, all other sentencing issues, including the length and manner of service of the sentences, were submitted to the trial court for determination. The trial court sentenced the appellant to five four-year sentences to be served in the Department of Correction. He appeals from these sentences contending that the trial court should have granted him an alternative sentence, specifically, probation or community corrections.

After review, we reverse and remand for consideration of sentencing alternatives.

## Background

The appellant's convictions arise from five separate, consensual, and unprotected sexual encounters with the female victim between the dates of April 29, 1997, and May 3, 1997. In April 1997, the appellant began dating the victim, a long-time friend. The victim subsequently found some medication that the appellant left at her home. When she questioned him about the medication, the appellant informed her that it was part of his treatment for lung cancer. Shortly thereafter, the victim doubted the appellant's explanation and contacted a pharmacist. The pharmacist informed her that the medication was for treatment of HIV/AIDS. The victim confronted the appellant with the information and he finally admitted that he was HIV positive.

---

[1]This offense provides that, "A person commits the offense of criminal exposure of another to HIV when, knowing that such person is infected with HIV, such person knowingly engages in intimate contact with another."

At the sentencing hearing, the appellant, a thirty-one year old high school graduate, testified that he contracted HIV through a sexual relationship with a former girlfriend who failed to tell him of her infection with the virus. After donating blood in August of 1996, the appellant was informed of his HIV positive status. The appellant admitted that he did not inform the victim of his HIV infection because "[he] didn't want to deal with the rejection." Additionally, he explained that, at the time of the sexual encounters, he was in denial regarding his infection with HIV.

Shortly after these offenses were committed, the appellant married Allene Bennett. Prior to their marriage, the appellant informed her that he was infected with HIV and that criminal charges were pending against him. He has two children from a previous marriage and two step-children from his present marriage. Before his arrest for these offenses, the appellant was regularly employed as a shipping clerk with an excellent work record. However, due to the present offenses, the appellant lost his job and has been unable to find further employment. The appellant's criminal history consists of three assault convictions each respectively in 1985, 1988, and 1996.

The proof at the sentencing hearing additionally revealed that, as a result of his HIV infection and the instant offenses, the appellant voluntarily sought assistance from Chattanooga Cares, an AIDS resource center. Since his arrest, he admits that he has been severely depressed and has attempted suicide twice. He admitted himself to Valley Psychiatric Hospital for treatment. Moreover, the appellant receives continuing psychiatric care from Family and Children Services. He reiterated his remorse for his actions and his concern for the victim. Several members from the Chattanooga Cares Center testified that the appellant is now "positive" in his attitude and has become a responsible person in dealing with his HIV status. The court also heard supportive testimony from the appellant's wife in addition to receiving numerous letters of support from family members. Although

3

the State presented no proof, it did advise the court that the victim tested negative for HIV shortly after the parties' last sexual encounter and was again found negative in a retest six months later.[2]

> In imposing a penitentiary sentence, the trial court observed:
>
> [O]ne of the reasons for incarceration is to avoid depreciating the seriousness of the offense, I think to do anything other than to require [the appellant] to be incarcerated would be saying to the public out there, "If you've got HIV and you're infected, it's okay to have sex with someone else and not tell them because if you are caught when you do it, than what's going to happen to you is if you're taking care of yourself and you're participating in the programs then you'll probably get placed on probation" . . .
> And so in order to avoid the seriousness of this offense as a deterrence and also because of the fact that [the appellant] has shown in the past by committing acts of assault on other persons that he has a disregard for the feelings and concern and the welfare of other people, I think that the proper sentence would be to serve four years and I'm going to order that it be served in the Department of Correction.

**Analysis**

Our legislature has recognized that not every person convicted of a felony should be imprisoned and that this state does not have the physical capacity or the financial resources to incarcerate every felon in the penitentiary. See Tenn. Code Ann. § 40-35-102(5) (1997). In furtherance of these legislative acknowledgments, the General Assembly has presumptively removed from confinement standard offenders convicted of class C, D, or E felonies who do not possess criminal histories evincing a clear disregard for the law; who have not committed the most serious offenses; and whose past efforts at rehabilitation have not failed. See Tenn. Code Ann. § 40-35-102(5) and (6). The goal of effective rehabilitation as an integral part of the sentencing process is repeatedly underscored within our

---

[2]The victim did not testify at the sentencing hearing, according to the State, based upon her concerns for privacy and embarrassment.

4

sentencing laws as is the encouragement and promotion of alternative sentencing options. See Tenn. Code Ann. §§ 40-35-102(3)(c); 40-35-103(6) (1997).

It should now be fundamental that, if the State wishes to confine a defendant statutorily entitled to the presumption of alternative sentencing, it bears the burden of presenting evidence showing that:

(A) The defendant has a long history of criminal conduct and confinement is necessary to protect society; or

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1)(A)-(C). In the present case, the State has failed to establish sufficient evidence to the contrary to necessitate a sentence of total confinement.[3] Additionally, the trial court's imposition of incarceration based upon "depreciating the seriousness of the offense" and "deterrence" rests entirely upon the appellant's guilt for his offenses. Accordingly, the trial court erred by not considering available alternatives to a sentence of total confinement.

Although the issues of "deterrence" and "depreciating the seriousness of the offense" have exhaustively been addressed by the appellate courts of this state with unmistakable clarity, we find it necessary to again address these concerns. In State v. Ashby, 823 S.W.2d 166, 170-171 (Tenn. 1991), our supreme court held, "[t]he finding of deterrence cannot be conclusory only but must be supported by the proof." The court reasoned that reliance upon deterrence as to the sole grounds for denying an alternative sentence "would defeat the whole concept of [an alternative sentence]" as deterrence is a factor uniformly present in every case. Reliance on

---

[3]We note that the appellant's three misdemeanor convictions for simple assault, two of which occurred over ten years ago, fall short of constituting "a long history of criminal conduct" and, thus, do not weigh in favor of confinement. See Tenn. Code Ann. § 40-35-103(1)(A).

5

this factor is no more realistic or reasonable than denying probation on grounds that the defendant committed a crime. Id. at 170. In accordance with Ashby, we have repeatedly held that, before a trial court can deny alternative sentencing on the grounds of deterrence, there must be some evidence contained in the record that the sentence imposed will have a deterrent effect upon similar future crimes within that particular jurisdiction. See State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). In the present case, no evidence was presented relative to the need for deterrence. We are confident that the granting of an alternative sentence in the present case will not unravel the moral fabric of Hamilton County. Indeed, it would appear unlikely that the imprisoning of an obscure indigent defendant will have little, if any, deterrent effect upon those likely to commit similar crimes in the future.

Additionally, beginning with State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991), this court has repeatedly held that, "[i]n order to deny an alternative sentence based upon the seriousness of the offense, 'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree" and the nature of the offense must outweigh all factors favoring a sentence other than confinement." See also State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1995). In Hartley, this court reasoned that, "once the legislature has specifically authorized the use of sentencing alternatives to confinement for a particular offense, trial courts may not summarily impose a different standard by which probation is denied solely because of the defendant's guilt for that offense."[4] Hartley, 818 S.W.2d at 374.

In addition to the trial court's findings in contravention of Ashby and Hartley, the court neglected to consider proof presented by the appellant supporting his

---

[4]Although the record has failed to establish the facts of this case to be so especially violent, horrifying or excessive as to outweigh the presumption of alternative sentence, this is not to say that the circumstances of every case involving criminal exposure to HIV can never be so especially violent, horrifying or excessive as to deny a sentence of confinement.

potential for rehabilitation.[5] <u>See</u> Tenn. Code Ann. § 40-35-103(5). In <u>State v. Zeolia</u>, 928 S.W.2d at 461, applying the statutory provisions of Tenn. Code Ann. § 40-35-210(b)(5),[6] this court held that the trial court may look to statutory mitigating and enhancing factors for guidance in determining the defendant's rehabilitative potential or lack thereof. In those cases involving an offender who is presumptively entitled to an alternative sentence, the potential for rehabilitation *must always* be weighed and considered before determining that a sentence of confinement should be imposed.

Inherent in every sentence involving release into the community are the following valid concerns

> (1) whether there is a substantial risk that during the period of release the offender will engage in additional criminal conduct; and

> (2) whether the offender is likely to respond affirmatively to participation in a rehabilitation program and/or imposed conditions of release.

After weighing the sentencing considerations of Section 103 against relevant mitigating and enhancing factors evidencing rehabilitative potential and the above two concerns, we cannot conclude that the State has presented evidence sufficient to rebut the presumption favoring an alternative sentence.

As previously recognized trial courts are encouraged to impose rehabilitative alternative sentencing options where permitted by statute. Our obligation upon appellate review is to act in furtherance of legislative intent embraced in the statutes.

---

[5]We do note that, in determining the appellant's length of sentence, the trial court applied the following non-enumerated mitigating circumstances: (1) the appellant exhibits some remorse; (2) he has an excellent work record and is actively seeking employment; (3) he has informed potential employers of his health status to his detriment; and (4) he has the support of his family and relatives. These factors are also supportive of the appellant's potential for rehabilitation.

[6]Tenn. Code Ann. § 40-35-210(b)(5) provides "to determine the specific sentence and the appropriate combination of sentencing alternatives . . . the trial court shall consider . . . (5) . . . [E]nhancing and mitigating factors. . . ."

7

**Conclusion**

Accordingly, this case is remanded to the trial court in order to allow consideration of appropriate alternative sentencing options including split confinement, community corrections [7] and probation coupled with the imposition of reasonable conditions relating to release.

_____
DAVID G. HAYES, Judge


CONCUR:


_____
JOHN H. PEAY, Judge


_____
JOHN EVERETT WILLIAMS, Judge

---

[7]The State incorrectly argues on appeal that the appellant is not eligible for a community corrections sentence. Eligibility for a community corrections sentence was specifically addressed by this court in State v. Boston, 938 S.W.2d 435 (Tenn. Crim. App. 1996) (reciting special needs criteria relevant to placement in community corrections program).