**STATE of Tennessee, Appellee,**

v.

**Tony Lynn ZEOLIA, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

March 21, 1996.

Deborah Black Huskins, Office of Public Defender, Johnson City, for appellant.

Charles W. Burson, Attorney General and Reporter, Michelle L. Lehmann, Assistant Attorney General, Criminal Justice Division, Nashville, David E. Crockett, District Attorney General, Joe C. Crumley, Jr., Asst. District Attorney General, Jonesborough, for appellee.

## OPINION

HAYES, Judge.

The appellant, Tony Zeolia, pled guilty in the Criminal Court of Washington County to four counts of arson, a class C felony. *See* Tenn.Code Ann. § 39–14–301(b)(1991). For each count, the appellant was sentenced as a range I standard offender to five years incarceration with the Tennessee Department of Correction. The trial court ordered that the sentences be served concurrently. The appellant now appeals his sentence, contending that the trial court should have granted him an alternative sentence pursuant to the Tennessee Criminal Sentencing Reform Act of 1989 and the Tennessee Community Corrections Act of 1985.

After reviewing the record, we affirm the judgment of the trial court.

### *I. Factual Background*

On October 18, 1994, the trial court conducted a sentencing hearing for the appellant, Gordon Silvers, and Steven Bennett.[1] Testimony at the hearing revealed that on October 3 and 4, 1993, the appellant, Gordon Silvers, Steven Bennett, James Bowman, and Amber Cundiff[2] participated in events leading to the burning of four barns[3] in Washington County. Jerimi Miller, an acquaintance of the various participants, testified that, on the evening of October 3, 1993, he

and Gordon Silvers were conversing in the parking lot outside Miller's home. The appellant, Amber Cundiff, and Steven Bennett arrived in Bennett's car. The appellant began to boast that he had burned down various barns. He suggested that they drive about the countryside and burn down more barns. Gordon Silvers rejected this suggestion, but indicated that he would be willing to simply drive around. At this point, Miller returned home. Later that night, the appellant, Bennett, and Cundiff came back to Miller's house. Cundiff informed Miller that more barns had been destroyed. The next day, Silvers visited Miller and drove Miller and his brother to a house that had apparently been burned down. Silvers told Miller that the appellant had ignited the house the previous evening.

Gordon Silvers, who was eighteen at the time of the offenses, also testified at the sentencing hearing. He confirmed that, on the evening of October 3, 1993, and in the early morning hours of October 4, 1993, he drove about Washington County with the appellant, Bennett, and Cundiff. He drove his car, and the appellant, accompanied by Bennett and Cundiff, drove Bennett's car. He further testified that, on three occasions, the appellant stopped nearby a barn and exited his automobile. Silvers admitted that, although all three barns were destroyed by fire, he only witnessed the appellant "light" one barn. He denied starting the fires himself.

Steven Bennett, who was twenty at the time of the offenses, testified that, on the evening of October 4, 1993, the appellant, accompanied by Bennett, Cundiff, and James Bowman, was again driving about Washington County. At one point, Bowman asked the appellant to drop him off at a barn. Bowman stated that he intended to burn the

---

1. Silvers pled guilty to three counts of arson and received an effective sentence of four years incarceration with the Tennessee Department of Correction. Bennett pled guilty to four counts of accessory after the fact to arson. He received an effective sentence of two years incarceration with the Tennessee Department of Correction. Neither Silvers nor Bennett appealed their sentences.

2. James Bowman and Amber Cundiff were juveniles at the time of the offenses, and their cases were adjudicated in separate proceedings.

3. The indictment charged the appellant with the burning of four barns. However, testimony at the sentencing hearing indicated that the appellant destroyed or damaged three barns and an abandoned house.

barn and asked the appellant to pick him up in approximately thirty minutes. When the appellant, Bennett, and Cundiff returned, Bowman had been apprehended by the owner of the barn.[4] Bennett denied starting any of the fires.

The appellant, who was eighteen at the time of the offenses, testified, "I had nothing to do with catching the barns on fire. I was just driving the car." He indicated that Gordon Silvers was the principal participant in the burnings. He explained that he did not call the police at any time during the commission of the offenses, because he "was too scared." He admitted that he initially lied to the police, telling the police that he was not present when the barns were ignited.

The evidence in the record relating to the extent of the damages caused by the appellant and his companions is comprised of the testimony of one of the victims, John Glaze, and a letter from another victim, William Young, which was included in the presentence report. John Glaze's barn suffered the least damage, because Glaze apprehended Bowman before Bowman could fully ignite the barn. Glaze testified that he suffered damages amounting to $117.60. However, he characterized the impact of all the barn burnings on Washington County as "devastating." William Young indicated that his damages amount to approximately $90,000. He has no insurance. Additionally, Young stated in his letter that this amount reflects the cost of building a single level structure. The original barn had two levels.

With respect to restitution, the appellant stated that, at the time of the sentencing hearing, he had obtained a job at O'Charley's Restaurant. Defense counsel introduced a letter confirming his employment. The appellant also receives social security disability benefits due to a mental disability. His wife was employed at Shoney's. However, his wife suffers from syncope, or seizures. Because she has no medical insurance, the appellant and his wife must pay the medical bills resulting from her illness. Neverthe-

less, the appellant indicated that he is willing to make restitution. At the time of the hearing, he was paying twenty dollars each month toward court costs. The appellant's wife testified that she and her husband would be able to pay at least fifty dollars each month toward restitution. The appellant's mother testified that, although she is willing to provide emotional and moral support to her son, she is unable to contribute to the appellant's restitution payments.

The appellant's mother also stated that the appellant has been receiving social security disability benefits for some time. She explained, "[I]t's not a severe case of retardation, but he has been classified as mildly retarded, which made him eligible to draw the SSI benefits.... He can't comprehend and do what a normal child of his age, you know, would actually be doing." The appellant's grandmother also described the appellant's mental difficulties: "Well, he's very slow. He's had a lot of problems in school. And he—he can't remember things." The presentence report indicates that the appellant completed high school.

Finally, the presentence report reveals that the appellant has no history of criminal convictions. However, as a juvenile, the appellant was adjudicated unruly on three separate occasions, twice pursuant to petitions filed by his mother and once pursuant to a petition filed by his probation officer. The appellant was placed on probation twice and finally committed to the "I & D Center, Holston Home" for a thirty to forty-five day evaluation.

## II. Review of the Sentence

The appellant contends that the trial court should have granted him probation or a sentence pursuant to the Community Corrections Act, both alternative sentences. Tenn. Code Ann. § 40–35–104(c)(2) and (8) (Supp. 1994). Therefore, we must initially ascertain whether the trial court properly excluded the appellant from any form of alternative sentencing.

---

4. The owner of the barn, John Glaze, also testified at the hearing. He stated that he and his son were guarding the barn that evening because he "had a premination (sic) that something might happen." Moreover, he had, earlier that week, noticed signs of attempted arson in his barn. He had also heard about the barns that were burned the previous evening.

Review by this court of the manner of service of a sentence is *de novo* with a presumption that the determination made by the trial court is correct. Tenn.Code Ann. § 40–35–401(d) (1990). Thus, the appellant bears the burden of showing that his sentence is improper. *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn.1991). The presumption of correctness, however, only applies if the record demonstrates that the trial court properly considered sentencing principles and all relevant facts and circumstances. *Id.* For reasons subsequently discussed in this opinion, we conclude that the trial court applied inappropriate sentencing considerations. Therefore, we do not defer to its sentencing determination.

In reviewing a trial court's denial of an alternative sentence, we must first determine whether the appellant is entitled to the statutory presumption that he is a favorable candidate for alternative sentencing. *State v. Bingham,* 910 S.W.2d 448, 453 (Tenn.Crim. App.), *perm. to appeal denied,* (Tenn.1995) (citing *State v. Bonestel,* 871 S.W.2d 163, 167 (Tenn.Crim.App.1993)). The trial court correctly noted that the appellant is entitled to the statutory presumption of alternative sentencing under Tenn.Code Ann. § 40–35–102(5) and (6) (Supp.1994). To be eligible for the statutory presumption, three requirements must be met. First, the appellant must be convicted of a class C, D or E felony. Tenn.Code Ann. § 40–35–102(6). Second, he must be sentenced as a mitigated or standard offender. *Id.* Third, the defendant must not fall within the parameters of section 40–35–102(5). *Id.* Thus, in order to benefit from the presumption, the defendant cannot have a criminal history evincing either a "clear disregard for the laws and morals of society" or "failure of past efforts at rehabilitation." Tenn.Code Ann. § 40–35–102(5). The appellant is a standard offender of four class C felonies. Thus, despite the appellant's juvenile history of unruliness adjudications, we conclude that he should be afforded a presumption favoring the imposition of an alternative sentence.

However, this presumption may be rebutted by "evidence to the contrary." Tenn. Code Ann. § 40–35–102(6). *See also Bing-*

*ham,* 910 S.W.2d at 454. Evidence to the contrary may include the following sentencing considerations, codified in Tenn.Code Ann. § 40–35–103 (1990):

(1) Sentences involving confinement should be based on the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

*Bingham,* 910 S.W.2d at 454 (citing *Ashby,* 823 S.W.2d at 169). A court may also apply the mitigating and enhancing factors set forth in Tenn.Code Ann. § 40–35–113 (1990) and –114 (Supp.1994), as they are relevant to the § 40–35–103 considerations. Tenn.Code Ann. § 40–35–210(b)(5) (1990). Finally, the potential or lack of potential for rehabilitation of a defendant should be considered in determining whether he should be granted an alternative sentence. Tenn.Code Ann. § 40–35–103(5).

Initially, we note that the trial court improperly considered deterrence in sentencing the appellant. Tenn.Code Ann. § 40–35–103(1)(B). Before a trial court can deny alternative sentencing on the basis of deterrence, evidence in the record must support a need within the jurisdiction to deter individuals other than the appellant from committing similar crimes. *Bingham,* 910 S.W.2d at 455 (citing *Ashby,* 823 S.W.2d at 170); *Bonestel,* 871 S.W.2d at 167; *State v. Byrd,* 861 S.W.2d 377, 380 (Tenn.Crim.App. 1993); *State v. Jones,* No. 03C01–9302–CR– 00057, 1994 WL 665198 (Tenn.Crim.App. at Knoxville, November 22, 1994), *perm. to appeal denied,* (Tenn.1995). A finding that the appellant's sentence will have a deterrent effect cannot be merely conclusory. *Id.* At the sentencing hearing, the trial court observed "that this is a situation where people

were burning barns to the point that citizens of Washington County are sleeping in their barns to avoid another arson." Generally, this court will not set aside findings of fact made by the trial court after an evidentiary hearing unless the evidence contained in the record preponderates against the trial court's findings. *State v. Dick*, 872 S.W.2d 938, 943 (Tenn.Crim.App.), *perm. to appeal denied*, (Tenn.1993); *State v. Young*, 866 S.W.2d 194, 197 (Tenn.Crim.App.1992), *perm. to appeal denied*, (Tenn.1993). In the context of sentencing hearings, this court similarly defers to the trial court's findings of fact. *State v. Raines*, 882 S.W.2d 376, 383 (Tenn.Crim. App.), *perm. to appeal denied*, (Tenn.1994). However, in this case, the only evidence in support of the trial judge's finding is the testimony of Robert Glaze. Again, Glaze testified that he and his son were guarding his barn on the night of October 4, 1993, because Glaze had experienced a premonition and because he had heard about the appellant's arson spree of the previous evening. Earlier that week, Glaze had also noticed marks on his barn indicative of attempted arson. We conclude that this testimony is insufficient to establish a need for general deterrence.

 Nevertheless, we agree with the trial court's determination that confinement is necessary to avoid depreciating the seriousness of the offense. Tenn.Code Ann. § 40–35–103(1)(B).

In order to deny an alternative sentence based on the seriousness of the offense, "the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree," and the nature of the offense must outweigh all factors favoring a sentence other than confinement.

*Bingham*, 910 S.W.2d at 454 (citing *State v. Hartley*, 818 S.W.2d 370, 374–375 (Tenn. Crim.App.1991)). First, the trial court noted the multiplicity of counts in this case. While we have declined to find a history of criminal conduct on the basis of multiple counts occurring very close in time, *State v. Brown*, No. 01C01–9108–CC–00240, 1993 WL 17479

(Tenn.Crim.App. at Nashville), *perm. to appeal denied*, (Tenn.1993),[5] we have also noted that "a court is not required to ignore that conduct as it relates to the evaluation of other [sentencing] factors," *State v. Hicks*, 868 S.W.2d 729, 732 (Tenn.Crim.App.1993). Indeed, failure to consider multiplicity of counts would be "simply irrational and offensive to the underlying principles of sentencing." *Id.* We conclude that the appellant's participation in the burning of four barns within one forty-eight hour period is directly relevant to the seriousness of the offense and weighs in favor of confinement.

Second, the extent of the victims' financial losses in this case reflects the seriousness of the offense. Tenn.Code Ann. § 40–35–114(6). The trial judge observed that "the amount of damage sustained by these victims is genuinely extraordinary." As noted earlier, the appellant's conduct in this case resulted in damages amounting to *at least* ninety thousand dollars. This estimate is based solely upon the damages to one barn. Again, the owner of this barn did not have insurance. Moreover, the record reflects that the appellant's malicious conduct destroyed a tobacco crop, the product of an entire year of work.

Third, the trial court found that the appellant was a leader in the commission of this offense, Tenn.Code Ann. § 40–35–114(2), implicitly finding that the appellant's apparent mental deficiencies did not reduce his culpability as required by Tenn.Code Ann. § 40–35–113(3) and (8). The trial court properly relied upon the testimony of the appellant's co-defendants and Jerimi Miller. Thus, we conclude that the appellant's mental condition does not significantly mitigate the seriousness of the offense.

 Additionally, this appellant's juvenile record is relevant, since the appellant was only eighteen at the time of the arsons. Tenn.Code Ann. § 37–1–133(b) (1991) provides that "[t]he disposition of a child ... in juvenile court may not be used against such child in any proceeding in any court ... *except in dispositional proceedings after conviction of a felony for the purposes of a*

---

5. *Contra State v. Cummings*, 868 S.W.2d 661, 667 (Tenn.Crim.App.1992).

*presentence investigation and report.*" (Emphasis added). Under Tenn.Code Ann. § 37–1–132(a)(1991), if a juvenile court finds that a child is unruly, it may place the child on probation under the supervision of the probation officer of the court. Accordingly, this court has considered the failure of probation following juvenile adjudications of unruliness and truancy in denying an adult appellant an alternative sentence. *See State v. Stacey,* No. 01C01–9111–CC–00341, 1992 WL 85794 (Tenn.Crim.App. at Nashville, April 29, 1992). The trial court in this case correctly considered the appellant's juvenile record, noting that probation has been applied unsuccessfully to the appellant. Tenn. Code Ann. § 40–35–103(1)(C). As mentioned earlier, the appellant was twice placed on probation pursuant to adjudications of unruliness. Less than two months after the appellant was placed on probation a second time, the appellant's probation officer filed a petition charging the appellant with truancy. The appellant was again adjudicated unruly and detained pending an evaluation.

The record also supports the trial court's conclusion that the appellant was not truthful at the sentencing hearing and failed to accept responsibility for his crimes. This court has observed that the appellant's credibility and willingness to accept responsibility for his crime are circumstances germane to his rehabilitation potential. *State v. Dowdy,* 894 S.W.2d 301, 306 (Tenn.Crim.App.1994). *See also* Tenn.Code Ann. § 40–35–103(5).

Finally, it is true that a general purpose of the Sentencing Act is to encourage restitution to victims when appropriate. Tenn.Code Ann. § 40–35–102(3)(D) (Supp.1994). The appellant argues that he is willing to make restitution, and, therefore, should be granted a sentence that facilitates such restitution. *See, e.g., State v. Frank,* No. 03C01–9209–CR–00303, 1993 WL 539401 (Tenn.Crim.App. at Knoxville, December 22, 1993). Nevertheless, for the reasons discussed above, we conclude that the State has met its burden and adequately demonstrated that the circumstances of the offense and the circumstances of this appellant call for confinement in the Department of Correction.

Accordingly, the judgment of the trial court is affirmed.

PEAY and TIPTON, JJ., concur.