IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 8, 2008

**STATE OF TENNESSEE v. JOSEPH BLOODGOOD**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 06-02005   James M. Lammey, Jr., Judge**

---

**No. W2007-01090-CCA-R3-CD  - Filed July 11, 2008**

---

The appellant, Joseph Bloodgood, pled guilty to facilitation of aggravated burglary and received a sentence of two years. The trial court denied the appellant alternative sentencing, and the appellant now appeals. Upon our review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

Leslie I. Ballin (at trial and on appeal) and Gray W. Bartlett (on appeal), Memphis, Tennessee, for the appellant, Joseph Bloodgood.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William L. Gibbons, District Attorney General; and Betsy Carnesale and Greg Gilbert, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In February 2006, a Shelby County Grand Jury returned an indictment charging the appellant in count one with aggravated burglary and in count two with theft of property over $10,000. Subsequently, on February 14, 2007, the appellant entered a guilty plea in count one to the amended charge of facilitation of aggravated burglary with an agreement that count two would be nolle prossed. As part of the plea agreement, the State recommended a sentence of two years as a standard Range I offender, a $500 fine, and restitution in the amount of $2000. The agreement provided that the appellant would seek probation.

At the guilty plea hearing, the State recited the following factual basis for the plea:

> September 28th, 2005, Kenneth Clark's residence located at 3587 Morning Light was burglarized. Approximately $18,000 in cash was taken. And investigation revealed that several different suspects had been doing work at the home, and one of the witnesses heard a conversation between a Nikita Hood and Dwayne Wilson regarding burglarizing the residence.[1] These are the co-defendants of the [appellant].
>
> [The appellant] was contacted to see if he knew if anyone was home at the Clark residence on a certain date; and when they discovered no one was home at the location, they – Nikita Hood and Dwayne Wilson went in and took $18,000 in cash from the home. [The appellant] received $2,000 from the home. He was a personal friend of the victim.

At the sentencing hearing, the victim, Kenneth Clark, testified that the appellant had been a friend of his son and had been in the Clark household numerous times to have dinner or spend the night. Clark did not know any of the other parties involved in the burglary. When Clark learned of the appellant's involvement in the crime, he was hurt because he had treated the appellant as a family friend.

Clark stated that prior to the offense, Hood and Wilson called the Clark household in an attempt to ascertain whether anyone was home. Clark recalled that the money had been locked in a drawer in his bedroom. Clark said that he felt betrayed by the appellant, and his children felt bad about bringing the appellant into their home. Clark said that after the offense, he had problems with his children because he thought they might be involved.

The appellant testified that he was twenty-two years old, had recently married, and had a ten-month-old daughter. The appellant stated that he had received his GED. He said that when he was eighteen, he was convicted of misdemeanor drug possession. He received judicial diversion for the offense, and the conviction was expunged from his record after he successfully completed eleven months and twenty-nine days on probation.

The appellant said that in order to pay restitution, he had saved $600 and he could pay the balance in three monthly payments of $465. He stated that he would earn the money by working construction, maintaining that he had been guaranteed forty hours of work per week. The appellant said that he and his wife were living with his mother-in-law to save money so he could pay restitution.

---

[1] In the indictment, Wilson's first name is spelled "Duane."

The appellant said that co-defendant Wilson is his father-in-law and that co-defendant Hood is the son of Wilson's girlfriend. The appellant said that he had learned from David Phillips, a friend of two of Clark's children, that Clark kept money in his home. The appellant testified that he did not know specifically where the money was located because he did not get that information from Phillips. The appellant told Hood and Wilson about the money, and Hood "hatched the plan" to burglarize the home. Hood told the appellant that if he would disclose where the money was, Hood would "go get it." Eventually, the appellant provided the information. Additionally, he gave directions to Clark's home, Clark's telephone number, and approximate times when people would be in the home.

The appellant said, "I really don't know why I did that." He acknowledged that even though he did not need money, he "let the thought of money come before friendship." The appellant said that Hood called him after the burglary and told the appellant to meet him at a gas station. Hood paid the appellant $2,000 for providing information about the money. Afterward, the appellant drove Hood home. The appellant used about half of the burglary proceeds to pay a truck note and an insurance bill. Two days later, while the appellant was at work, he was robbed at gunpoint. The robber took $1,100 that the appellant had left from the burglary proceeds. The appellant reported the robbery to police. The appellant said that he was sorry for his involvement in the crime, maintaining that betraying the Clarks "hurt me more than anything."

The appellant's presentence report reflects that "[o]n 12/4/2006, Wilson pled guilty to facilitation of aggravated burglary. He was sentenced to 2 years (suspended) and placed on 2 years probation. On 11/30/2006, Hood pled guilty as charged and was sentenced to 3 years (suspended) and placed on three years probation." The appellant's counsel argued, "[W]e just don't understand how the principals could be granted [suspended sentences] with bad records and [the appellant] is without a bad record." The trial court commented that "for me, it all boils down to the violation of trust."

At the conclusion of the sentencing hearing, the trial court stated that it was troubled that the appellant had violated the Clarks' trust. The court said that the crime was "deplorable," especially because Clark's victim impact statement indicated that the cash stolen was, in part, the family's Christmas money. The court noted that the appellant had previously been given diversion and "had an opportunity to make his life right." The court said that it did not believe the appellant had good potential for rehabilitation because, despite past opportunity to reform, the appellant did not do so. On appeal, the appellant challenges the trial court's denial of alternative sentencing.

## II. Analysis

An appellant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a) (2006). The appellant's sentence meets this criteria. Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). The following sentencing considerations, set

forth in Tennessee Code Annotated section 40-35-103(1), may constitute "evidence to the contrary":

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. See Tenn. Code Ann. § 40-35-103(5).

In the instant case, the appellant is a standard Range I offender convicted of a Class E felony; therefore, he is considered to be a favorable candidate for alternative sentencing. However, the trial court said that "the nature and the circumstances of this . . . particular offense weighs against" granting alternative sentencing, noting that if someone had been home when the offense was carried out, the offense "ha[d] the potential of being a very, very, very awful situation. Somebody could have died." Additionally, the court opined that "probation at all would really depreciate the seriousness of the offense," particularly in light of the appellant's violation of a trust in order to get money to "pay[] a car note and some insurance or something." Further, the court stated that it did not believe the appellant had good potential for rehabilitation. The court noted that the appellant had a previous conviction, for which he received judicial diversion. Despite receiving diversion, the appellant again committed a crime, indicating that the appellant was resistant to reform. As this court has said, "[a] felon's rehabilitation potential and the risk of repeating criminal conduct are fundamental in determining whether he or she is suited for alternative sentencing." State v. Keen, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999). We find no error in the trial court's denial of alternative sentencing.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE