IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 15, 2009

## STATE OF TENNESSEE v. CEDRIC ANTONIO CONNER

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 268816     Don W. Poole, Judge**

_____

**No. E2009-01438-CCA-R3-CD - Filed May 20, 2010**

_____

The appellant, Cedric Antonio Conner, pled guilty in the Hamilton County Criminal Court to aggravated assault and received a six-year sentence. On appeal, he challenges the trial court's refusal to grant him an alternative sentence. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., joined. JOSEPH M. TIPTON, P.J., concurred in results only.

Darren Kennedy, Chattanooga, Tennessee, for the appellant, Cedric Antonio Conner.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William H. Cox, District Attorney General; and Cameron Williams, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

The Hamilton County Grand Jury indicted the appellant on count one with the attempted first degree murder of the victim, Derrick Thornton, a Class A felony, and on count two with the aggravated assault of the victim, a Class C felony. Subsequently, the appellant pled guilty to aggravated assault in exchange for a sentence of six years as a standard Range I offender and the dismissal of the attempted first degree murder charge. The plea agreement further provided that the trial court was to determine the manner of service of the sentence.

The appellant did not include a transcript of the guilty plea proceedings in the record for our review. However, at the sentencing hearing the victim testified regarding the circumstances of the offense. The twenty-nine-year-old victim testified that he was a resident of Chattanooga and was unemployed. The victim said he occasionally did "odd jobs" and had sold cocaine in the past.

The victim said that prior to the incident in question, he had seen the appellant once but did not really know him. Around midnight on May 20, 2008, the victim was in the "projects" visiting his friend, Jeffrey Hudgins. Hudgins was standing on the porch of the residence, and the victim was sitting on the edge of the porch when the appellant walked up to the victim and identified himself. The appellant confronted the victim about a female named "Yo-Yo" with whom both men were involved. The victim told the appellant that "Yo-Yo" said she was no longer involved with the appellant. The appellant disputed her claim, maintaining they were still a couple. The victim told the appellant that "Yo-Yo" should be able to decide with whom she wanted to be involved.

At that point, the appellant reached into the front pocket of his red "hoodie" sweatshirt and began firing a semiautomatic pistol that was concealed in the pocket. The victim said he saw the handle of the gun when the appellant tried to "raise it up." The victim said he was unarmed and had not threatened the appellant. The victim said he felt a burning sensation when a bullet entered his right leg, and he felt his left leg go cold and "paralyzed." As the victim tried to crawl inside the residence for safety, he saw the appellant running backwards, still firing his gun.

The victim said his major injuries included gunshot wounds to his stomach, liver, and right lung. Doctors had to remove half of the victim's liver. The victim also suffered gunshot wounds to his right arm, both feet, and multiple shots to both legs. The victim also had "graze" wounds to his left arm and left side. In total, he suffered two "graze" wounds and ten gunshot wounds.

The victim said he was unconscious for three weeks and was in the hospital for about a month or a month and a half. The victim stated that when he awoke in the hospital, his pain was unbearable. After his release, he returned to the emergency room multiple times. He continued to suffer pain and was on pain medication. He stated that he had numbness in his legs, a bullet in his thigh, and bullet fragments in his leg. He said he had issues with his circulation and would probably suffer arthritis at an early age. He stated that he had difficulty breathing after his lung collapsed. The victim had problems sleeping and was plagued with bad dreams. The victim asserted that he would be "highly upset" if the appellant received probation. He stated that considering the number of times he was shot, he felt the appellant should have been convicted of attempted murder.

The appellant made an allocution in which he contended that "things did happen much differently than perceived to be and I'm not the type of person that I've been perceived to be." The appellant maintained that he was "the only person in this matter . . . stepping forward as far as taking responsibility" for the incident, explaining that he pled guilty to aggravated assault in order to take responsibility. The appellant expressed his regret for his behavior on the night in question.

The appellant stated that he had been incarcerated for thirteen months, "greatly suffering for my actions." He said that while in confinement, he sought help from an Alcoholics Anonymous program and from other programs which were offered in jail. The appellant said he was concerned about his four children, especially his stepdaughter whose mother had died and had only the appellant to support her. The appellant averred that he had a good work history and had a job waiting for him if he received alternative sentencing. The appellant said, "I've never been the type that's out there assaulting people and catching these kind of charges."

In making its sentencing determination, the trial court noted that the thirty-five-year-old appellant was married but had divorce proceedings pending. He had four children. The court observed that the appellant had an extensive criminal history consisting largely of misdemeanor convictions, including two theft offenses, two assault offenses, one simple possession of cocaine offense, vandalism, and various driving offenses. Additionally, the appellant had one conviction from Georgia that would have been a felony in Tennessee. In each case, the appellant received probation. The appellant violated his Georgia probation and continued to incur new charges after the completion of his Tennessee probations. The court noted that the circumstances of the offense were very serious; the appellant armed himself and confronted the victim at his friend's home. The court found that although the appellant had a favorable work history, his past failures to rehabilitate after receiving probation and the seriousness of the offense meant that the appellant should not be awarded an alternative sentence. On appeal, the appellant challenges this ruling.

## II. Analysis

Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d) (2006). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant

in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

We note that the appellant failed to include the transcript of the guilty plea hearing in the record for our review. However, from the testimony at the sentencing hearing we conclude that the trial court did not err in denying the appellant an alternative sentence.

An appellant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a) (2006). The appellant's sentence meets this requirement. Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). Tennessee Code Annotated section 40-35-103(1) sets forth sentencing considerations which are utilized in determining the appropriateness of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

See also State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

In the instant case, the appellant is a standard Range I offender convicted of Class C felonies; therefore, he is considered to be a favorable candidate for alternative sentencing. However, as the trial court noted, the appellant has repeatedly been granted probationary sentences and, despite his repeated convictions and the largess of the courts, he has continued to violate the law, proving that he is unable to conform his behavior to comply with the law. Additionally, the trial court noted that the appellant armed himself and sought a confrontation with the victim. The victim was shot numerous times and was seriously injured. Based upon these facts, the trial court found that granting the appellant an alternative sentence would depreciate the seriousness of the offense. There is nothing in the record to preponderate against the trial court's ruling.

### III.  Conclusion

Finding no error, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE