# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 24, 2009

## STATE OF TENNESSEE v. WILLIAM LADONTE DAVIS

### Direct Appeal from the Circuit Court for Bedford County
### No. 16450    Robert Crigler, Judge

---

### No. M2009-00138-CCA-R3-CD - Filed May 21, 2010

---

The appellant, William Ladonte Davis, pled guilty to possession of .5 grams or more of a substance containing cocaine with the intent to sell and conspiracy to sell cocaine, receiving sentences of eleven years and five years, respectively.  On appeal, the appellant challenges the trial court's denial of alternative sentencing, specifically contending that he should have been sentenced to probation or community corrections.  Upon review, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Andrew Jackson Dearing, III, Shelbyville, Tennessee, for the appellant, William Ladonte Davis.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Charles Crawford, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The Bedford County Grand Jury returned a multi-count indictment charging the appellant in count one with possession of .5 grams or more of a substance containing cocaine with the intent to sell, a Class B felony; in count two with possession of .5 grams or more of

a substance containing cocaine with the intent to deliver, a Class B felony; and in count three with conspiracy to sell or deliver cocaine, a Class C felony. On September 15, 2008, the appellant entered guilty pleas to all of the charged offenses. The plea agreement provided that the trial court would determine the length and manner of service of the sentences.

At the guilty plea hearing, the State recited the following factual basis for the charges:

> [O]n the date alleged in the indictment, agents of the Drug Task Force executed a search warrant at a residence here in Shelbyville. Upon making entry the [appellant] and his co-defendant Talisha Sparrow were found in the residence. They first spoke to Ms. Sparrow and she indicated where some illegal drugs were hidden in the house. They then spoke to the [appellant] and he indicated where some additional illegal drugs were hidden in the house. They conducted a search. They uncovered a substantial amount of crack cocaine and a large sum of money. They also discovered digital scales. The money [totaled] just a few dollars shy of $9000. Crack cocaine – there was testing done on 45.9 grams of it. There was an additional quantity of 21.3 [grams] which had all of the characteristics of crack cocaine although not tested so you have about 67 grams of crack cocaine that was seized.
>
> The [appellant] did give a statement to the authorities that he had been involved in the illegal distribution of crack cocaine for about a year. He indicated that he was purchasing two to four ounces of crack cocaine twice a week from an individual in Nashville and that he typically paid around $2600 for every four and a half ounces of crack cocaine.
>
> And he indicated that he had been dating the co-defendant Talisha Sparrow for [a] few months. During that timeframe [sic] he had been bringing crack cocaine here to Shelbyville and selling it from Ms. Sparrow's apartment. Then again he indicated where various illegal drugs and money and such were hidden.

Defense counsel informed the trial court that the appellant disputed the statement that he admitted selling cocaine. However, he did not deny that he was selling cocaine. The trial court accepted the appellant's guilty pleas and scheduled a sentencing hearing.

As an exhibit at the sentencing hearing, the State submitted a copy of the appellant's presentence report. Additionally, Timothy Lane, the director of the Seventeenth Judicial District Drug Task Force, testified that crack cocaine was the "greatest [drug] problem" within the district. Director Lane said that the amount of crack cocaine found at the apartment was a "major seizure," ranking within the top five percent of all crack cocaine seizures in fourteen years. Director Lane stated that the amount of money seized, $8,959, and the digital scales at the apartment indicated that the money was derived from the sale of illegal drugs. Director Lane testified that the appellant admitted he had sold crack cocaine from Sparrow's apartment "for some period of time." Director Lane stated that there was a need to deter "this type of activity" within the Seventeenth Judicial District.

In making its sentencing determination, the trial court found that the appellant was a standard, Range I offender. The trial court merged the convictions of possession with intent to sell and possession with intent to deliver. The court applied one enhancement factor, that the appellant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. See Tenn. Code Ann. § 40-35-114(1). The court noted that the appellant did not have any prior felony convictions but that he did have a misdemeanor history of disorderly conduct, resisting arrest, criminal trespass, possession of marijuana, and casual exchange. Additionally, the court noted that the appellant admitted to Director Lane that he sold crack cocaine for about one year, indicating a significant history of criminal conduct. The court stated that it would apply mitigating factor (1), that the appellant's criminal conduct neither caused nor threatened serious bodily injury, and (13) that the appellant saved the State the expense of a trial by pleading guilty. See Tenn. Code Ann. § 40-35-113(1) and (13). The trial court imposed a sentence of eleven years for possession of cocaine with the intent to sell and five years for conspiracy to sell or deliver cocaine and ordered the sentences to be served concurrently.

The trial court found that the appellant was not an appropriate candidate for alternative sentencing. The trial court said that to grant an alternative sentence would depreciate the seriousness of the offense, a sentence of confinement would serve as a deterrent to the appellant and to the community, and measures less restrictive than confinement had been applied unsuccessfully to the appellant. On appeal, the appellant challenges the trial court's denial of alternative sentencing, arguing that he should have been placed on community corrections.

## II. Analysis

Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d) (2006). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the

sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence(s). See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

An appellant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a) (2006). Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). Tennessee Code Annotated section 40-35-103(1) sets forth sentencing considerations which are utilized in determining the appropriateness of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

See also State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. See Tenn. Code Ann. § 40-35-103(5).

In the instant case, the appellant is a standard Range I offender convicted of a Class B felony and a Class C felony. Because of the Class B felony conviction, he is not considered to be a favorable candidate for alternative sentencing. Moreover, the appellant

received a sentence of eleven years, making him ineligible for probation. See Tenn. Code Ann. § 40-35-303(a). Therefore, the trial court did not err in denying the appellant a probationary sentence.

Turning to the appellant's community corrections claim, we note that the Community Corrections Act of 1985 was enacted to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. Tennessee Code Annotated section 40-36-106(a)(1) provides that an offender who meets all of the following minimum criteria shall be considered eligible for community corrections:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
>
> (C) Persons who are convicted of nonviolent felony offenses;
>
> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
>
> (F) Persons who do not demonstrate a pattern of committing violent offenses . . . .

For offenders not eligible for community corrections under subsection (a), Tennessee Code Annotated section 40-36-106(c) creates a "special needs" category of eligibility. Subsection (c) provides that

> [f]elony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional

institution, may be considered eligible for punishment in the community under the provisions of this chapter.

Tenn. Code Ann. § 40-36-106(c).

The appellant contends that he is eligible for community corrections under subsection (a) and subsection (c). However, this court has previously concluded that an offender must first be eligible for probation to qualify for community corrections under the "special needs" provision of subsection (c). State v. Grigsby, 957 S.W.2d 541, 546 (Tenn. Crim. App. 1997). Therefore, because the appellant is not eligible for probation, he is not eligible for community corrections under subsection (c).

However, this court has previously held that "eligibility for probation is not required for consideration of community corrections under section (a)." State v. Vincent Johnson, No. W2008-02156-CCA-R9-CD, 2009 WL 3349291, at *3 (Tenn. Crim. App. at Jackson, Oct. 19, 2009); see also State v. John W. Biaselli, No. M2007-00129-CCA-R3-CD, 2008 WL 741481, at *5 (Tenn. Crim. App. at Nashville, Mar. 20, 2008). Regardless, eligibility for community corrections does not automatically entitle an offender to receive a community corrections sentence. Johnson, No. W2008-02156-CCA-R9-CD, 2009 WL 3349291, at *3.

In the instant case, the trial court found that alternative sentencing was not appropriate. Specifically, the trial court stated:

> I do credit Director Lane's testimony that . . . incarceration is necessary to avoid depreciating the seriousness of the offense and is particularly suited to provide an effective deterrent to people likely to commit similar offenses. Furthermore, less restrictive measures than confinement have been applied unsuccessfully to the [appellant] in the past . . . . [Additionally,] he has a long history of criminal conduct. I'm not sure he has a long history, but he certainly does have a history, so certainly that in conjunction with the need for deterrence and the fact that he has had probation in the past is sufficient to deny alternative sentencing.

The appellant has previously received probation on three misdemeanor sentences, yet he has continued to violate the law, demonstrating a lack of rehabilitative potential. By his own admission, he was engaged in the sale of crack cocaine for at least a year. Moreover, Director Lane stated that crack cocaine was the biggest drug problem in the district and that the seizure of crack cocaine in the instant case was one of the largest in the past fourteen

years, indicating the need for deterrence in the community and the seriousness of the appellant's offense. We conclude that there is nothing in the record to preponderate against the trial court's finding that the appellant was not an appropriate candidate for alternative sentencing.

### III.  Conclusion

Accordingly, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE