# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### May 25, 2010 Session

## STATE OF TENNESSEE v. DENNIS NEIL BIZZOCO

### Direct Appeal from the Criminal Court for Hamilton County
### No. 260523    Don W. Poole, Judge

---

### No. E2009-00768-CCA-R3-CD - Filed March 3, 2011

---

The appellant, Dennis Neil Bizzoco, pled guilty to vehicular homicide by intoxication, reckless homicide, vehicular assault, and driving under the influence (DUI). He received a total effective sentence of eight years in the Tennessee Department of Correction. On appeal, the appellant challenges the trial court's denial of his request for alternative sentencing and the denial of his Tennessee Rule of Criminal Procedure 35 motion. Additionally, the appellant argues that his convictions for DUI, vehicular homicide by intoxication, and vehicular assault violate double jeopardy. We conclude that the appellant's double jeopardy claim has merit; therefore, we vacate his conviction for DUI. However, we affirm the appellant's remaining convictions and sentences.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed in Part, Reversed in Part.

NORMA McGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. McMULLEN, JJ., joined.

Randall E. Reagan, Knoxville, Tennessee (on appeal), and Lee Davis, Brian H. Hoss, Donna Robinson Miller, and Jerry H. Summers, Chattanooga, Tennessee (at trial), for the appellant, Dennis Neil Bizzoco.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel; William H. Cox, III, District Attorney General; and Neal Pinkston, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Factual Background

The appellant was originally indicted by the Hamilton County Grand Jury for two counts of vehicular homicide by intoxication as a result of the deaths of Brandon Bodifer and Jerry Martin, the vehicular assault of Kera Bowman, the vehicular assault of Heather Brownfield, the reckless aggravated assault of Kera Bowman, the reckless aggravated assault of Heather Brownfield, one count of DUI, and one count of DUI, per se.

On January 29, 2009, the appellant pled guilty to the vehicular homicide by intoxication of Martin, a Class B felony; the reckless homicide of Bodifer, a Class C felony; the vehicular assault of Bowman, a Class D felony; and DUI, a Class A misdemeanor. The plea agreement provided that the appellant would receive concurrent sentences of eight years, three years, two years, and eleven months and twenty-nine days, respectively. The plea agreement further provided that the remaining charges would be dismissed and that the trial court would determine the manner of service of the sentences. At the plea hearing, the State recited the following factual basis for the appellant's guilty pleas:

> [O]n the 14th of June 2006, around 10:00 at night, at the 900 block of Mountain Creek Road, which is very near a roundabout, leading up the W. Road towards Signal Mountain, the [appellant] was driving a Mitsubishi Montero. With him was a passenger in the front seat, Brandon Bodifer, behind him in the driver side was Ms. Kera Bowman, on the other side in the backseat was one Heather Brownfield.
>
> Would note that a vehicle car crash occurred, wherein [the appellant] was traveling southbound on Mountain Creek Road and crossed a double yellow line and struck a Lexus SUV, driven by one Jerry Martin, and his passenger, Joel King. The immediate wreck resulted in the death later at the hospital of Mr. Martin and then later on Mr. Bodifer.
>
> . . . [P]rior to the crash, . . . witnesses . . . saw the Mitsubishi Montero at the Kangaroo Market on Mountain Creek Road, which is about the 1100 block, not very far from where the crash occurred, indicated that [the appellant] was talking . . . about being intoxicated. This witness would say that in their opinion this Mitsubishi Montero, with [the appellant] and the other passengers, left at a high rate of speed out of the parking lot going toward, northbound, toward the roundabout at the foot of the W. Road.

Another witness the State would bring was a guard at the Mountain Creek Apartments, within this apartment complex is a guard shack. He would indicate he heard a vehicle in his opinion traveling somewhere at a high rate of speed, that circled the roundabout, he estimates between three and four times. After circling the roundabout, he says he hears tires squeal and then eventually crash, which somewhat brings us up to date, about 10:00 when this crash occurred.

Officer David Allen, . . . the Chattanooga Police Department lead investigator, he conducted a traffic reconstruction report of this and would show that after leaving the roundabout, [the appellant is] driving the vehicle, struck a mailbox on the northbound side of the road, and then, . . . proof would show overcorrected and that's when he crossed the yellow line, striking Mr. Martin.

The traffic reconstruction report would show also . . . that the [appellant] was traveling above the posted speed limit. Part of the road is 35, part of it's 40. We would have him above that, above the speed limit. Obviously, [the defense], in discussions about this case, had spoken with an expert that would disagree with not all of the details, but some of the details of Mr. Allen's report, and the jury could have heard that and would have considered that.

After the wreck, Mr. Martin, Ms. Bowman, the [appellant], they had to be extricated from the vehicles. Mr. Bodifer was ejected from the vehicle. Mr. King remained in the vehicle and got out. Mr. Martin died later on that night, early morning hours, Mr. Bodifer as well. Ms. Bowman and Ms. Brownfield had injuries, as did [the appellant]. Mr. King had medical attention and was released that night.

. . . .

. . . [A]t 12:25 a.m. on the 15th, blood was taken from [the appellant] and it comes back, a TBI expert would have testified, it was .17, which is obviously in excess of the state's legal

limits, as well as trace amounts of marijuana in the [appellant's] system.

On March 9, 2009, the trial court held a sentencing hearing to determine the manner of service of the appellant's sentences. The presentence report reflected that the appellant was twenty years old at the time of the offenses. While the appellant had no prior criminal convictions, he reported using marijuana and alcohol since he was fourteen years old. Additionally, the presentence report reflected that after the instant offenses, the appellant was arrested in Georgia for underage drinking.

Brian Bodifer's mother, Debra Bodifer, testified that her son and the appellant had been friends. She said that she once visited her son's grave and saw the appellant and his family there. She stated that at first she was angry but that she was later comforted to know that the appellant's family stood by him and that he grieved the loss of his friend. Ms. Bodifer said that since the incident, she had done research on drunk driving and crashes. She maintained that she did not necessarily want the appellant to spend time in jail because she believed it would be more beneficial to have him counseling his peers against the behavior that caused the accident.

Dr. Dennis Luke Bizzoco, the appellant's father, testified that the appellant's family was sorry for the families of the victims. He noted that the appellant was also seriously injured in the accident and was hospitalized in the intensive care unit. Dr. Bizzoco said the appellant's injuries left him with no memories of the accident. Dr. Bizzoco stated that the appellant's family had reached a civil settlement with the victims' families, and the appellant was trying to become a better person. He said the appellant worked long hours at his job, was involved in church, and performed community service. He opined, "The immature boy is becoming a responsible young man."

Alvin Dean Yancy, a prison chaplain at Morgan County Correctional Complex and pastor at the Providence Baptist Church in Ooltewah, testified that he met the appellant and his family through the church Yancy pastored. Yancy said the appellant was involved in the church's music program. Yancy wanted the appellant to speak to the youth about staying away from alcohol and drugs. Yancy said the appellant felt remorse for his actions. Yancy stated that through his chaplaincy he knew of the temptation of drugs in prison, which he described as a "college for crime." He said it would be a tragedy for the appellant to be incarcerated and have to fight that temptation again.

The appellant testified that he was extremely immature, irresponsible, and on a destructive path when the accident occurred. He said that he was sorry and that he had changed. He wanted to be a good influence on his younger brother and others.

The appellant said that after the accident, he was taken to the hospital where he was treated for two collapsed lungs, a torn liver, a torn spleen, multiple broken bones in his leg, and a severe concussion. He stated that the inflammation in his brain could have affected his memory, accounting for his lack of memories about the accident. He said that he recalled coming home from work at 5:00 p.m. and telling Bodifer that he had no money so they should invite people over instead of going out. At 5:30 p.m., the appellant had a drink and put hotdogs on the stove; the next thing the appellant remembered was waking up in the hospital. The appellant said he did not recall using marijuana that day, but he acknowledged "that was how [he] was living [his] life."

The appellant said that after his arrest in the instant case, he stopped using drugs and alcohol after he spent seven months in two different treatment centers. However, after his release from the centers, he started using again. Approximately one year after the accident, while he was on bond for the instant offenses, he was arrested in Georgia for underage drinking. The appellant said that after the Georgia arrest, he realized that he did not want to drink again.

The appellant acknowledged that he made poor choices which led to the accident. He knew he was responsible for the deaths and the injuries because he was driving when the accident happened. He said that the accident was his fault and that he wanted to take responsibility.

Timothy Stuart Collins, the chief manager for Allied Information Technology, said that the appellant had worked for the company for about fifteen months. Collins was initially concerned about hiring the appellant. However, he was a good employee and was promoted. Collins said he had never received any complaints about the appellant's work. Collins said the company drug tested its employees every three to six months and that all of the appellant's drugs screens came back negative.

The trial court said that it "dreaded" and "struggled with" making a sentencing determination. The trial court acknowledged that there were many positive factors in the appellant's life, such as his supportive family and his work history. Nevertheless, the court was concerned about the appellant's rehabilitative potential, noting his arrest in Georgia for underage drinking only a year after the accident that claimed two lives.

The court believed that to grant the appellant alternative sentencing would depreciate the seriousness of the offenses. The court found that the offenses were especially serious considering that the appellant, a minor who was driving a car full of his friends who were also minors, stopped at a convenience store just prior to the crash and announced he knew

he was intoxicated. Thereafter, the appellant left the store at an excessive speed and began driving recklessly. The court noted that Bodifer, who was nineteen years old "was thrown some 70 feet from the car because of the excessive speed and the reckless conduct." The court observed that the appellant, Bowman, and Brownfield were injured and required surgery and that King was injured. The court found the appellant's behavior to be horrific and ordered the appellant to serve his sentence in confinement.

Subsequently, the appellant timely filed a motion for modification of his sentence under Tennessee Rule of Criminal Procedure 35, again requesting alternative sentencing. The court held a hearing but ultimately denied the motion. On appeal, the appellant challenges the trial court's ruling regarding the denial of alternative sentencing.

## II. Analysis

### A. Alternative Sentencing

Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in his own behalf; and (7) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence(s). See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

An appellant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a). The appellant's sentences meet this criteria. Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). The following sentencing considerations, set forth in Tennessee Code Annotated section 40-35-103(1), may constitute "evidence to the contrary":

> (A) Confinement is necessary to protect society by restraining a
> defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. See Tenn. Code Ann. § 40-35-103(5).

In the instant case, the appellant is a standard Range I offender convicted of a Class B felony; therefore, he is not considered to be a favorable candidate for alternative sentencing. However, the length of his sentence was ten years, rendering him eligible for alternative sentencing.

The trial court found that to grant the appellant probation in this case would depreciate the seriousness of the offense. This court has previously stated that the nature and circumstances underlying the criminal conduct may alone give rise to the denial of probation. See Tenn. Code Ann. § 40-35-210(b)(4); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). When imposing confinement based upon the seriousness of the offense, the trial court must first determine if "'the circumstances of the offense[s] as committed [are] especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree.'" Zeolia, 928 S.W.2d at 462 (quoting State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995)).

The trial court found that the offense was horrifying in that the underage appellant's blood alcohol content was .17, opining that to drink that much was "intentional." The court also found that the deaths and injuries to the appellant and other victims made the crimes horrific. Further, the court questioned the appellant's rehabilitative potential, noting that even though he caused deaths and serious injuries by drinking and driving, he engaged in underage drinking about a year after the offenses.

As the trial court observed, the record reflects that the appellant, who was twenty years old, used marijuana and drank until he had a blood alcohol level of at least .17, more than twice the legal limit. While he was intoxicated, the appellant drove three friends. They stopped at a convenience store where witnesses heard the appellant say he was intoxicated. Afterward, the appellant and his three companions drove away, over the speed limit. The appellant looped the roundabout several times before ultimately crashing into Martin. The

crash caused the death of two people and the serious injuries of four others. Despite that, the appellant continued to drink underage, as is evidenced by his Georgia arrest. Based upon the foregoing, we cannot say that the trial court erred in finding that granting alternative sentencing would depreciate the seriousness of the offenses. See State v. Keaton M. Guy, No. E2007-01827-CCA-R3-CD, 2008 WL 5130729, at *14 (Tenn. Crim. App. at Knoxville, Dec. 8, 2008).

## B. Rule 35 Motion

The appellant also contends the trial court erred in denying his motion for suspended sentence pursuant to Rule 35 of the Tennessee Rules of Criminal Procedure. Rule 35 provides:

> (a) Timing of Motion. The trial court may reduce a sentence upon motion filed within 120 days after the date the sentence is imposed or probation is revoked. No extensions shall be allowed on the time limitation. No other actions toll the running of this time limitation.
>
> (b) Limits of Sentence Modification. The court may reduce a sentence only to one the court could have originally imposed.
>
> (c) Hearing Unnecessary. The trial court may deny a motion for reduction of sentence under this rule without a hearing.

Tenn. R. Crim. P. 35(a)-(c). "This rule does not vest the defendant with a remedy as of right." State v. Elvin Williams, No. M2006-00287-CCA-R3-CO, 2007 WL 551289, at *1 (Tenn. Crim. App. at Nashville, Feb. 22, 2007). The Advisory Commission Comments to Rule 35 explain that "[t]he intent of this rule is to allow modification only in circumstances where an alteration of the sentence may be proper in the interests of justice."

There was no proof adduced at the Rule 35 hearing that was not presented at the sentencing hearing, except for numerous letters endorsing the good character of the appellant. Accordingly, we conclude that the trial court did not abuse its discretion in denying the appellant's Rule 35 motion.

## C. Double Jeopardy

Finally, the appellant contends that DUI is a lesser-included offense of vehicular homicide by intoxication and vehicular assault and that his DUI conviction therefore violates

double jeopardy. The State concedes that the appellant's DUI conviction offends double jeopardy principles.

The double jeopardy clauses of the United States and Tennessee constitutions protect an accused from multiple punishments for the same offense. State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996). This court has previously held that double jeopardy prohibits separate convictions for DUI and vehicular assault based upon one act of driving under the influence that causes serious bodily injury and that the claim was not necessarily waived on direct appeal if the convictions were pursuant to a guilty plea. State v. Rhodes, 917 S.W.2d 708, 713 (Tenn. Crim. App. 1995); see also Menna v. New York, 423 U.S. 61, 62 (1975). Additionally, this court has previously held that double jeopardy precludes simultaneous convictions for DUI and vehicular homicide by intoxication. State v. Thomas W. Cothran, No. M2005-00559-CCA-R3-CD, 2005 WL 3199275, at *8 (Tenn. Crim. App. at Nashville, Nov. 29, 2005). Accordingly, the appellant's convictions for DUI, vehicular homicide by intoxication, and vehicular assault offend double jeopardy principles. Therefore, we conclude that the trial court should have merged the DUI conviction into the convictions for vehicular homicide by intoxication and vehicular assault. Thus, we must vacate the appellant's DUI conviction, eleven month and twenty-nine day sentence, and $565.00 fine.

### III. Conclusion

In sum, we conclude that because of a double jeopardy violation, we must remand to the trial court for the appellant's DUI conviction to be merged into his convictions for vehicular homicide by intoxication and vehicular assault. However, we affirm the appellant's remaining convictions and sentences in all other respects.

_____
NORMA McGEE OGLE, JUDGE