# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September10, 2009

## STATE OF TENNESSEE v. DONNA SUE MROZOWSKI

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-61018     Robert E. Corlew, III, Judge**

---

**No. M2008-02836-CCA-R3-CD - Filed May 26, 2010**

---

Appellant, Donna Sue Mrozowski, pled nolo contendere to a Class B vehicular homicide charge stemming from an incident in which she drove her car off a highway, killing a pedestrian.  Appellant and the State agreed to an eight year sentence but left the manner of service to be determined by the trial court.  After a hearing, the court denied Appellant's request for alternative sentencing.  Appellant now appeals, and we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH, and J.C. MCLIN, JJ., joined.

Gilbert L. Anglin (at trial), and Gerald L. Melton (on appeal), Murfreesboro, Tennessee, for the appellant, Donna Sue Mrozowski.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William Whitesell, District Attorney General; and Thomas E. Parkerson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

Appellant was driving her minivan on New Nashville Highway at around 4:00 p.m. on November 30, 2006.[1] Appellant claims that another car drifted into her lane, forcing her to swerve to avoid it. However, no witnesses saw a second car. Appellant veered off the road and struck several cars that were parked at a car dealership that lined the highway. The victim, Richard Scalf, was standing in the lot and was hit by Appellant's vehicle. He was killed instantly. An EMT (Emergency Medical Technician) responded to the scene and treated Appellant. The EMT noted that Appellant was lethargic, had slurred speech, was difficult to understand, and had an strong odor on her breath. Appellant, who has a history of alcohol abuse, denied consuming alcohol that day but admitted that she had been drinking mouthwash and cough medicine. She also told the EMT that she had been prescribed Lithium. A blood test taken at the hospital did not indicate Appellant had an elevated blood alcohol content. It did show, however, that Appellant had consumed Dihydrocodeine and Dihydrocodeinone. The results were consistent with Appellant consuming drugs she had been prescribed.

After an investigation into the incident could not corroborate Appellant's claim that she was forced off the road by another vehicle, a Rutherford County Grand Jury indicted her on two counts of vehicular homicide and one count of driving while under the influence of an intoxicant, third offense. Pursuant to a plea agreement, Appellant pled nolo contendere to one count of Class B vehicular homicide and the State dismissed the remaining counts. The parties agreed that Appellant's sentence should be eight years, and a hearing was held in order for the trial court to rule on Appellant's request for alternative sentencing.

The State called six witnesses at the sentencing hearing. The first, Sergeant Andrew Miller, who had been with the Smyrna Police Department since 1996, was the lead investigator in the case. Sergeant Miller testified that he arrived at the scene of the accident around 4:00 p.m. in response to multiple 911 calls regarding a severe accident. At the scene, Sergeant Miller found a minivan in the parking lot next to a car dealership. Sergeant Miller also found that the victim, a pedestrian who had been shopping for a car to purchase for his son as a Christmas present, had been hit by the minivan. The minivan had traveled approximately 200 feet from the time it crossed the fog line until it hit the first car in the lot. It made "glancing blows" to several parked vehicles and then hit the victim. In all, the minivan hit approximately ten cars; some suffered only minor damage, others were totaled. It continued for about another 40 feet after it hit the victim, pinning him to the hood until the minivan struck another car and he was thrown off. In total, the victim traveled more than 141 feet from the spot where the minivan first hit him until he finally came to rest. The victim was dead when Sergeant Miller arrived.

---

[1] New Nashville Highway is also known as Murfreesboro Road and Route 101.

Based upon Appellant's account of the incident, Sergeant Miller began to investigate the case as a hit-and-run. The police looked for the vehicle that Appellant said came into her lane and forced her off the road. Because the accident occurred around rush hour, there were multiple witnesses. Several witnesses saw the minivan leave the highway and strike the other cars and the victim. None of them saw the second vehicle. Furthermore, Sergeant Miller testified, the physical evidence did not comport with Appellant's hit-and-run version of events. In particular, he explained that the skid marks did not indicate that Appellant had been run off the road.

The investigation then focused on Appellant. Sergeant Miller testified that the Tennessee Bureau of Investigation conducted an analysis of Appellant's blood. Although it did not reveal that Appellant had alcohol in her blood, it did reveal the presence of Dihydrocodeine and Dihydrocodeinone. While Sergeant Miller did not know the appropriate medicinal levels for those substances, he testified that the tests showed Appellant had "impairment" levels in her blood.

The State next called Shawn Tyson, an officer with the Metro-Nashville Police Department who at the time was an EMT-IV for the Rutherford County Emergency Medical Service. Officer Tyson's unit was the first on the scene after the accident, and he testified that the victim was dead upon their arrival. Officer Tyson testified that Appellant had no major external injuries. He described Appellant as "slow to respond" and "kind of confused." He also noted that she had a "strong odor on her breath of . . . a mouthwash or something of that type." Appellant told Officer Tyson that she swerved to miss a vehicle and that she was not aware of what she had hit. She denied that she had lost consciousness and denied using alcohol. However, she told Officer Tyson that she had been drinking mouthwash and cough medicine throughout the day and that she had been prescribed Lithium. Officer Tyson testified that Appellant had slurred speech that was difficult to understand and that she was lethargic and hard to arouse at times.

Officer Tyson testified that, although Appellant's symptoms could result from a trauma, he did not believe they were caused by a trauma in this case. He noted that Appellant was wearing her seatbelt, which would have prevented severe trauma. She had no obvious external injuries. The steering wheel had no deformities, and the damage to the windshield came from the outside, not the inside. In short, the evidence did not suggest that Appellant suffered a physical trauma. Instead, Officer Tyson believed that Appellant was intoxicated. He explained that Appellant's lethergy and slurred speech were signs of intoxication. Her conduct was "consistent with a person who appears impaired," not someone who had been in an accident. He testified that Appellant's statements that she had been drinking mouthwash and cough syrup "all day," and the fact that she smelled of a "strong odor" like mouthwash, further supported the conclusion that Appellant was impaired.

The State also called Merilynn Raney, an employee of the Tennessee Board of Probation and Parole. Ms. Raney prepared the appellant's presentence investigation report. That report notes that Appellant, who was 58 years old at the time of the accident, had two prior DUI convictions for offenses that occurred in 1996 and 2000.

The State then called three of the victim's family members. All three testified about the devastating effect the victim's death had on them individually and the family as a whole. They also uniformly requested Appellant serve a long jail sentence.

Appellant testified as the first of six witnesses for the defense. She began with her version of the events. She testified that a blue van came into her lane and forced her off the road. She also testified that she did not know that she had hit the victim until she was in the emergency room.

Appellant then described her extensive medical problems. At the time of the accident, Appellant was being treated for cirrhosis of the liver, fibromyalgia, and Hepatitis C. She suffers from deteriorating disc disease, has a bulging disc in her back, and has arthritis. She also testified that she had been diagnosed as bipolar and as a paranoid schizophrenic. She had been taking Percocet and Lortab at the time of the accident, but she took them within the prescribed limits. Appellant explained that she had been taking Percocet for about four years and that she was aware of the physical limitations the drug imposed upon her. She further testified that none of her physicians warned her against driving while taking these medications. Appellant acknowledged that she told the EMT that she was taking Lithium and that she did not tell either the EMT or the medical personnel at the emergency room that she had been taking Percocet or Lortab. Although she had long blamed the driver of the vehicle that forced her off the road, in the statement she gave to the probation office in preparation for the presentence report, she wrote that "[i]n hindsight, [she had] come to believe that [her] medication probably did affect [her] driving."

Appellant acknowledged that she had a history of alcohol abuse. She admitted to having prior DUIs. She said that she had been to alcohol rehabilitation facilities three or four times and that she stopped drinking in 2002. Appellant also admitted that she had an addiction to pain medications, although she denied that she abused them.

Appellant testified that she had been institutionalized three times since the accident. She was currently being treated by four doctors and was on multiple medications. She was, in her words, "totally disabled."

Appellant described herself as "a very spiritual woman" who would "never, never ever hurt anybody, ever." She testified that she wanted the victim's family to see her to

understand that she was "not unremorseful." In addition, Appellant testified that, since the accident, she had "seen" the victim approximately six times.

Finally, Appellant testified that she believed her sentence should be suspended because the victim's death was an accident and she did not mean to hurt anyone.

The defense next called Appellant's husband, Victor Mrozowski. He testified that Appellant was a "tenderhearted" woman, but that she was "losing her mind." He described the terrible impact the accident had on Appellant and her family. He also noted that Appellant had attempted suicide.

Appellant's pastor, Richard Radford, also testified about the impact the accident had on Appellant. He noted that she was a "spiritual woman" and that she had significant emotional problems. However, he testified that he did not believe Appellant would be a threat to society if she were free.

Barbara Owens, Appellant's cousin, testified that Appellant was a caring, thoughtful, and kind person who would not hurt anyone. She further testified about the traumatic effect the accident had on Appellant and said that the appellant would not be risk to society if given a non-custodial sentence.

Appellant's close friend, Evelyn Sue Smith, testified that she had lunch with Appellant on the day of the accident. She described Appellant as "fine" and her typical self. Ms. Smith also encountered the scene just after the accident occurred. She testified that Appellant told her that she was forced off the road by another vehicle. In addition, Ms. Smith testified that Appellant appeared "out of it." Ms. Smith explained that Appellant appeared that way because of the accident, not because she was impaired. Finally, Ms. Smith testified that Appellant was an honest and caring person and that the accident had a major emotional impact on her.

Finally, Appellant's sister, Brenda Gray, also described Appellant as a caring and kind individual. She also testified about the impact the accident had on Appellant.

At the close of evidence, the State argued that Appellant had failed to meet her burden to prove alternative sentencing was appropriate. It listed several enhancement factors under Tennessee Code Annotated section 40-35-114 that it asserted counseled against alternative sentencing. It further contended that there were no mitigating factors. In the State's view, Appellant's impaired driving, despite her previous DUIs and her social history of emotional, psychiatric, and physical problems indicated that alternative sentencing was not appropriate.

In response, the defense argued that Appellant did not pose a threat to society. It noted that she did not have a long, detailed criminal history. It further noted that the intoxicants in Appellant's system were prescription drugs and that they were present in levels consistent with the prescribed limits. It also reiterated Appellant's position that she was run off the road by another driver. Moreover, the defense argued that an alternative sentence would not depreciate the seriousness of this offense because Appellant would have a felony conviction and would continue to be emotionally devastated by her actions. Finally, the defense contended that prior less restrictive measures had been successful, citing Appellant's 2002 alcohol rehabilitation treatment.

At the close of the hearing the trial court denied Appellant's request for alternative sentencing. The court listed the factors and circumstances it considered in arriving at its decision. In particular, the court noted that Appellant had two prior DUI convictions. Furthermore, the court noted that there were both enhancing and mitigating factors, which counseled both for and against suspending Appellant's sentence. However, the court concluded that, on balance, its duty was to impose a custodial sentence.

## II. Analysis

Appellate review of the manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d) (2006). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on Appellant to demonstrate the impropriety of her sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

The Sentencing Reform Act of 1989 encourages judges to utilize non-incarceration sentencing alternatives. See Tenn. Code Ann. § 40-35-103(6); see also State v. Ring, 56 S.W.3d 577, 584 (Tenn. Crim. App. 2001). But the Act also provides that certain offenders should be considered "favorable candidate[s] for alternative sentencing." Tenn. Code Ann. § 40-35-102(6). Because Appellant is a Class B offender, she is not among those "favorable

candidate[s]." Id. Nonetheless, a sentence involving incarceration should be based upon the following:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1). The trial court may also consider the applicable mitigating and enhancing factors under sections 113 and 114 as well as "the potential or lack of potential for rehabilitation in determining whether incarceration is appropriate." See State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996); see also Tenn. Code Ann. § 40-35-103(5).

Upon our review of the record, we conclude that the trial court properly denied alternative sentencing. We are particularly troubled by the fact that Appellant has twice been convicted of DUI and the instant offense is a vehicular homicide resulting from Appellant's use of intoxicants. We appreciate that Appellant's intoxication in this case was not caused by alcohol consumption and that she claims to have ceased drinking alcohol entirely.[2] However, we are unable to overlook the fact that the instant offense occurred as a result of appellant's intoxication. We further note that Appellant was not given full custodial sentences for her prior convictions. In that sense, "[m]easures less restrictive than confinement have . . . recently been applied unsuccessfully" to Appellant. Tenn. Code Ann. § 40-35-103(1)(C).

As the trial court recognized, there may be mitigating circumstances counseling in favor of alternative sentencing. If nothing else, the record supports the trial court's finding that Appellant is remorseful, which can be a mitigating factor under the catch-all provision. See Tenn. Code Ann. § 40-35-113(13). In addition, Appellant has consistently maintained she had only taken drugs prescribed, that she had only taken them in the prescribed doses, and that she did not believe she was impaired. She has also consistently maintained that she was forced off the road by another driver. These points might support mitigation under Tennessee Code sections 40-35-113(3) and (11), although the points about her medication do not fit within section 113(8). See Tenn. Code Ann. § 40-35-113(8) (providing that "the

---

[2] We note, however, that the record contains strong evidence that at the time of the accident Appellant was drinking mouthwash and cough syrup excessively.

voluntary use of intoxicants does not fall within the purview of this factor"). Appellant also pointed to her apparently successful alcohol rehabilitation and her evident emotional and psychological breakdown to suggest that she needs, and can be responsive to, treatment.

On balance, we conclude, as did the trial court, that the powerful considerations favoring incarceration outweigh those favoring alternative sentencing. Appellant has a track record of substance abuse and driving while impaired. Tragically, this combination led to the victim's death. While Appellant may be genuinely remorseful and may not have believed she was doing anything wrong at the time, that alone does not entitled her to alternative sentencing. The trial court weighed all of the facts and circumstances and concluded alternative sentencing was not appropriate. Our own review of the record leads us to agree.

### III.  Conclusion

Based upon our review of the record, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE