# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 19, 2010

## STATE OF TENNESSEE v. EDWARD POPE

### Direct Appeal from the Circuit Court for Rutherford County
#### F-62648B      Don R. Ash, Judge

### No. M2009-01538-CCA-R3-CD - Filed August 10, 2010

The Defendant, Edward Pope, pled guilty to attempted aggravated robbery and aggravated assault, with an agreed effective sentence length of seven years and with the trial court to determine manner of service. Following a sentencing hearing, the trial court ordered the Defendant to serve his sentence in confinement. The Defendant appeals, claiming the trial court erred in denying him an alternative sentence. After a thorough review of the record and applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Howard W. Wilson, Murfreesboro, Tennessee, for the Appellant, Edward Pope.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Benjamin A. Ball, Assistant Attorney General; William Whitesell, District Attorney General; Thomas E. Parkerson, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from an armed home burglary. A Rutherford County grand jury indicted the Defendant for conspiracy to commit aggravated burglary, aggravated burglary, conspiracy to commit aggravated robbery, attempted aggravated robbery, possession of a firearm during the commission of a dangerous felony, felony reckless endangerment, attempted first degree murder, and aggravated assault. The Defendant plead guilty to

attempted aggravated robbery and aggravated assault, out of range, as a Range II, multiple offender, with the remaining charges to be dismissed. The Defendant agreed to an effective sentence of seven years, reserving the determination of the manner of service for the trial court.

Because the record does not include a transcript of the plea hearing, we summarize the facts of this case based upon the technical record and the sentencing hearing transcript. The Defendant, along with two other males and two females, went to the victim's home to rob the victim. The three males went to the door with weapons. The victim opened the door, and he and the Defendant became engaged in a physical altercation, during which the Defendant discharged his weapon, firing a bullet into a wall in the apartment. The three males fled the scene with one of the co-defendants, Deonday Evans, firing three shots behind him in the direction of the victim's apartment. Evans's shots inadvertently struck the Defendant, who required extensive medical care for the bullet wounds.

The following evidence was presented at the consolidated sentencing hearing for Evans and the Defendant: Evans testified that he agreed to plead guilty to attempted aggravated robbery and aggravated assault, with a sentence of seven years at thirty-five percent for each count, to run concurrently. As part of the agreement, the manner of service was reserved for the trial court, and Evans asked the trial court for an alternative sentence, preferably probation. Evans testified he wanted to avoid going to jail so that he could attend school and seek a degree. He stated that he graduated from high school and wanted to go to college. Evans, who was twenty at the time of the hearing, further stated that he wanted "to turn [his] life around" while he was still young.

Evans agreed that the nature of this crime was very serious and that the Defendant was seriously injured in the course of its commission. Evans testified that he was nineteen when this crime occurred. Evans read a letter of apology to the victim, although the victim was not present during the sentencing hearing.

Evans said that he had a drug problem and started smoking marijuana when he was sixteen or seventeen. Evans testified that he was armed when he, along with several other individuals, went to the victim's home to steal drugs. He recalled that, after the Defendant discharged his gun in the victim's home, he fled, shooting three rounds over his shoulder. He did not recall any of the shots striking the Defendant but said "[he'd] been told" that he shot the Defendant. Evans testified that he took the Defendant to the hospital and remained there with him even though he knew the police would find him at the hospital.

Evans agreed that he had previously violated the terms of two different probation sentences, which he had received for possession of marijuana and contributing to the

delinquency of a minor. He also admitted having a juvenile record for reckless burning.

Evans's mother was also present at the sentencing hearing and the parties stipulated that she would have testified that Evans had a place to stay and she was willing to supervise him, should the trial court order supervised probation.

The Defendant testified that he was twenty at the time of the sentencing hearing and nineteen at the time he committed the crimes in this case. Before he was taken into custody for the charges in this case, the Defendant, who has two children, lived with his mother. The Defendant received his G.E.D. after being suspended from high school. He testified that, if given an alternative sentence, he would work at the hair salon where his mother worked and obtain his barber's license.

The Defendant testified that he started smoking marijuana when he was twelve or thirteen years old. He admitted he had two misdemeanor theft convictions and a criminal trespass conviction. The Defendant explained the basis of these convictions, saying that his children's mother called him from school saying she was sick, and, when he went to the school to check on her, he was charged with criminal trespass. He also was charged with theft because school-issued excuse slips were found in his pocket. In defense of his actions, the Defendant said, "I was up [there] for my own right because my girl was sick. So what am I supposed to do, let her get sick in school and not do anything about it?"

The other theft conviction was for stealing a box of Little Debbie cakes from a Kroger. The Defendant explained that he and his little brother were at the store when the Defendant's little brother was stopped for stealing the Little Debbie cakes. The Defendant explained why he received a conviction for his little brother's conduct by saying "I stood up as a man because my little brother is too young to be in juvenile. . . . So I took the charge for him, took upon my own time and took the charge for him because I didn't want to see my little brother go through that trouble."

Additionally, the Defendant had a juvenile record containing an adjudication of delinquency for an aggravated robbery offense for which he received six months probation When asked why he received such a minor sentence for such a serious offense, the Defendant explained that he was exiting a store when a robbery was occurring and "[t]he guy with the gun asked me to look into the truck and that's what I did for him."

The Defendant next recounted events from the night of the robbery in this case, saying he had been robbed, and one of his friends told the Defendant he knew where the Defendant could get his "stuff" back. The Defendant, along with several friends, went to the victim's home to "take back some drugs." The Defendant acknowledged that he knew

the victim as an acquaintance but not a close friend. The Defendant described the interaction with the victim as follows: "See, when I went in I had the gun out. Yes, I had the gun out. But when we got in that's when a struggle took place and the gun was actually issued them [sic]. When we were wrestling over the gun that's when the gun shot off." The Defendant grabbed his gun and was fleeing the apartment when he was shot. The Defendant went to the hospital and then, due to the critical nature of his injuries, he was flown to Vanderbilt where he was treated for two weeks.

The Defendant said that this life-threatening situation had changed him and that he believed that God had given him a second chance to be a better person. The Defendant testified that he is going back to church and attending religious programs. He also hoped to talk to kids about his experience in hopes that he could prevent them from making the same choices.

On cross-examination the Defendant defended his role in the robbery saying:

Somebody come up against you and take whatever you got. But if you work so hard for something that somebody just comes and strips it from you, what do you expect? You've got to go back. Like I said it's different than going up to rob a person for nothing. But at the same time when somebody takes from you that's basically taking [out of] my kids' mouth and feeding my family. They're taking from me. Of course I'm going to try to go back and I'm going to go back and get it. At least try to, attempt to.

The Defendant's mother was present at the sentencing hearing and the parties stipulated that she would testify that the Defendant could live with her, that the Defendant has found God, and that she would take him to church as well as do whatever she could to help him meet the probation requirements.

The trial court found that the Defendant was not a good candidate for probation, based upon the Defendant's criminal record, past violations of probated sentences, and the fact that he was inside the victim's home with a loaded gun. The trial court ordered the Defendant to serve his seven year sentence in confinement. It is from this judgment that the Defendant now appeals.

## II. Analysis

The Defendant argues that the trial court erred in denying his request for an alternative sentence. The State responds that, the evidence in this case supports a denial of an alternative sentence and that, because the Defendant failed to include a plea hearing

transcript in the record, this Court must presume that sufficient evidence supports the trial court's denial of alternative sentencing.

When a defendant appeals the manner of service of a sentence imposed by the trial court, this Court conducts a *de novo* review of the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006). The presumption of correctness, however, is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the appealing party to show that the sentence is improper. T.C.A. § 40-35-401(d), Sentencing Comm'n Cmts. Thus, if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration to the factors and principles relevant to sentencing based upon the Sentencing Act, we may not disturb the sentence even if a different result were preferred. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Factors to be considered when a trial court is determining whether incarceration is appropriate are: (1) whether confinement is necessary to protect society by restraining a defendant with a long history of criminal conduct, (2) whether confinement is need to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses, and (3) whether measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. *Ashby*, 823 S.W.2d at 169. *See* T.C.A. § 40-35-103(1)(A)-(C) (2006). A trial court should also consider a defendant's potential or lack of potential for rehabilitation. T.C.A. § 40-35-103(5) (2006).

As the State points out, any evidence presented at the guilty plea hearing should be considered in determining whether a sentence is appropriate, but the Defendant failed to include a transcript of the guilty plea hearing in the appellate record. *See* T.C.A.. § 40-35-210(b)(1) (2006). It is the duty of the defendant to prepare a fair, accurate, and complete record on appeal to enable meaningful appellate review. Tenn. R. App. P. 24. Failure to include the transcript of the guilty plea hearing in the record prohibits this Court from conducting a full de novo review of the sentence under Tennessee Code Annotated section 40-35-210(b).

Nonetheless, the record before us supports the trial court's determinations relative to the Defendant's criminal history and inability to comply with the requirements of previously ordered probated sentences. The Defendant has seven misdemeanor convictions. In four of these cases, he violated probated sentences. The Defendant's juvenile record also indicates that he was adjudicated delinquent for robbery and sentenced to six months

probation. He also violated his probation in that case. These facts show the Defendant has poor potential for rehabilitation, which is sufficient to justify a term of incarceration rather than an alternative sentence. *State v. Zeolia*, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996). Therefore, we conclude that the Defendant has failed to show that the trial court erred by ordering him to serve his sentence in confinement.

The Defendant does not challenge the trial court's findings regarding his criminal history and failed attempts at probation, rather he attacks the denial of alternate sentencing on other grounds.

The Defendant asserts that the trial court erred when it relied on enhancement factor (9), the possession of a firearm during the commission of the offense and enhancement factor (10) "the defendant had no hesitation about committing a crime when the risk to human life was high" in denying alternative sentencing because they are both elements of the offense of aggravated assault. T.C.A. § 40-35-114(9) & (10) (2006); *See* T.C.A. § 39-13-102(a)(1)(B) & (2)(B).

Although the use of a deadly weapon is an element of the offense of aggravated assault under Tennessee Code Annotated section 39-13-102(a)(1)(B) and (2)(B), aggravated assault can also be committed by one who assaults another and causes serious bodily injury. Thus, in some cases of aggravated assault, the use of a deadly weapon may be an appropriate enhancement factor. *See* Tenn. Code Ann. § 39-13-102(a)(1)(A) and (2)(A). In this case, however, the indictment indicates that the aggravated assault charge is based upon the use of a deadly weapon rather than serious bodily injury, thus, enhancement factor (9) was improperly considered by the trial court as an enhancement factor. Tenn. Code Ann. § 40-35-114(9).

As to Tennessee Code Annotated, section, 40-35-114(10), that the defendant had no hesitation about committing a crime when the risk to human life was high, the trial court's consideration of this factor was not improper. This court has previously held that, when considering the defendant's conduct with regard to the victim, this factor is inherent in the offense of aggravated assault based upon the fact that the use of a deadly weapon in itself creates a risk to human life, however, proof establishing risk to life other than the victim's may be used to apply enhancement factor (10). *See*, *State v. Claybrooks*, 910 S.W.2d 868 (Tenn Crim. App. 1994). The risk to human life may also include the risk to the life of a co-defendant. *See*, *State v. Stapleton*, E2008-01776-CCA-R3-CD, 2009 WL 3754371 at *6 (Tenn. Crim. App. November 10, 2009). In this case, the Defendant's possession of the weapon is the basis for the aggravated assault, however, the Defendant employed his gun in the presence of not only the victim in this case but the two co-defendants. Thus, we disagree that the trial court erroneously applied enhancement factor (10).

Next, the Defendant argues that the trial court's comparisons between Mr. Pope and his co-defendant resulted in sentencing inequality contradictory to the purposes of the Sentencing Act. Specifically, the Defendant relies on the trial judge's statements from the bench following the sentencing hearing.

> Mr. Pope, you have a worse criminal record and you were inside the house with the loaded gun. And based upon those things and your past actions I don't think you're a good candidate for probation. I don't think you'd comply with the conditions of probation. And based upon that I'm going to order you to serve your sentence.

The Defendant reasons that because the trial court noted that his criminal history is more extensive than his co-defendant's that the trial court somehow used the co-defendant's record as a benchmark that would cause a harsher sentence for the Defendant. That is not our view of the trial court's statements. The sentencing hearing was consolidated and thus both the Defendant and his co-defendant were present when the trial judge ruled from the bench following the hearing. The trial court sentenced the co-defendant first and then sentenced the Defendant. The two sentences were different and, in our view, the trial court appropriately addressed why the Defendant was receiving a more restrictive sentence than his co-defendant. The Defendant is not entitled to relief on this issue.

The Defendant also challenges the trial court's mention of the Defendant's presence inside the apartment while possessing a loaded gun. The Defendant argues that this statement suggests that the co-defendants in this case were not in the apartment, which is contrary to the Defendant's testimony at the sentencing hearing. The Defendant relies on his own statement that, following his physical altercation with the victim and firing of his weapon in the victim's home, he "[saw his] friends run out the door" as proof that the trial court relied on inaccurate information. The Defendant did not include a copy of the guilty plea hearing transcript which would contain the evidence the trial court relied upon in accepting the plea agreement. Other than the Defendant's testimony at the sentencing hearing, there is nothing to indicate where the two co-defendants were positioned during this crime. The trial court appropriately considered the circumstances of the Defendant's crimes. The Defendant is not entitled to relief on this issue.

Finally, the Defendant argues that the trial court did not clearly articulate its reasoning as to the enhancement factors. Tennessee Code Annotated, section, 40-35-210(f), requires that, "A sentence must be based on evidence in the record of the trial, the sentencing hearing, the presentence report, and the record of prior felony convictions filed by the district attorney general with the court." The trial court, in its order, listed the evidence and the applicable factors it considered in denying an alternative sentence. The

trial court then concluded, "Given defendant's extensive prior record, his poor history as a probationer, and the seriousness of the offense involving use of a deadly weapon in the victim's home, this Court does not find defendant to be a good candidate for alternative sentencing." We conclude that the trial court's order is clear. The trial court considered the sentencing principles and all relevant facts and circumstances. *See State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The Defendant is not entitled to relief as to this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we conclude the trial court did not err when it denied the Defendant an alternative sentence. As such, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE