# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

Assigned on Briefs November 24, 2009

## STATE OF TENNESSEE v. WILLIAM COMFORT

**Direct Appeal from the Circuit Court for Warren County**
No. F-11586     Larry B. Stanley, Jr., Judge

---

**No. M2009-00672-CCA-R3-CD - Filed September 9, 2010**

---

The appellant, William Comfort, pled guilty in the Warren County Circuit Court to attempted aggravated sexual battery, a Class C felony, and was sentenced to eight years in the Tennessee Department of Correction.  On appeal, the appellant challenges the trial court's imposition of an eight-year sentence and the denial of alternative sentencing.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Trenena G. Wilcher, McMinville, Tennessee, for the appellant, William Comfort.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy E. Paduch, Assistant Attorney General; Lisa S. Zavogiannis, District Attorney General; and Thomas Miner, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I.  Factual Background

The Warren County Grand Jury indicted the appellant for the aggravated sexual battery of K.F.,[1] a victim under thirteen years of age, a Class B felony.  On February 3, 2009, the appellant pled guilty to attempted aggravated sexual battery, a Class C felony.  The plea

---

[1]  It is the policy of this court to refer to minor victims of sexual offenses by their initials.

agreement provided that the appellant would be sentenced as a Range II multiple offender and that the trial court would decide the length and manner of service of the sentence.

At the plea hearing, the State recited the following factual basis for the plea:

> The facts in this case are that between March 1, 2007 and September 30, 2007, most probably in April of that year, a young girl [K.F.] whose date of birth is November 17, 1995 was a guest at [the appellant's] house on Caldwell Street. There were a number of family members of [the appellant's] there on that day. During the course of that day [K.F.] had gone into [the appellant's] bedroom, sat on his bed with him while he was watching a movie there and he ended up placing his hand on the inside of her blouse and touching her breast. That was later reported to law enforcement and [the appellant] came to the District Attorney's Office and met with Todd Rowland from the police department and our investigator on April 25, 2008 at which time he gave a written statement acknowledging basically these facts. His version was the girl had come into his room and he had put his arm around her shoulder and that somehow his hand had gone down inside her blouse and touched her breast.

At the sentencing hearing, James Leach, the lead officer in the Tennessee Board of Probation and Parole's sex offender unit, testified that he prepared the seventy-nine-year-old appellant's presentence report. The report contained the following statement the appellant signed concerning the offense:

> What happened was [K.F.] was at my house for a birthday party[.] I was in my bedroom watching a John Wayne movie and [K.F.] came in and sat down beside me. I put my arm around her. She took my hand and put it on her breast. I then put my hand under her shirt which was very low cut and felt of her breast. [K.F.] left in a little while. After this interview I am going to go cut some cuttings. While I was feeling of her breast they were real small she didn't have much. I will apologize to her if she would apologize to me. I thought [K.F.] was fourteen years old. I am sorry for what happened.

Leach said the appellant acknowledged that in 1954 he was dishonorably discharged from the United States Air Force after being court martialed for assaulting an officer. Leach

said that on a "Static 99 Coding Form," a ten-question form used to assess the likelihood of a male sexual offender reoffending, the appellant scored low. The low score indicated that he was a low risk to reoffend.

Leach recalled that he once asked the appellant if he had any firearms, and the appellant said he did. Leached asked the appellant if someone could take his firearms because he was not allowed to keep them, and the appellant said he did not have any firearms. Leach stated that he was unsure if the appellant gave contradictory information due to confusion or because he was trying to be deceptive. Leach said that the appellant had no substance abuse problems and that he had no "established pattern of sexually assaultive behavior."

Leach said that he had some difficulty getting the appellant to schedule a mandatory psychosexual evaluation. Eventually, the appellant reported to Dr. Tom Netherton's office for the evaluation. On all but one of Dr. Netherton's tests, the appellant scored at a low risk to reoffend. The other test scored him as a medium risk, but Leach said Dr. Netherton thought the result could be attributed to the appellant's difficulties reading or to his confusion. However, Dr. Netherton also told Leach that he went over each question with the appellant.

Dorinda Comfort, the appellant's daughter-in-law, testified that she took K.F. to the appellant's house on the day of the offense. While they were visiting at the appellant's house, K.F. told Comfort about the incident. K.F. was very upset and was crying. She spent the night with Comfort and returned home the next day.

Comfort testified that she and her husband, the appellant's son, were estranged. However, while they were married they frequently visited the appellant. She eventually stopped going to the appellant's residence. She explained that at one family dinner, the appellant put his arm around her shoulder, put his hand down her shirt, grabbed her breast, and squeezed. She backed away from the appellant, and the appellant's grandson came in and told the appellant to "quit flirting." She stated that some of the appellant's family members had threatened her or called her names since the appellant was charged in the instant offense.

Emily Fults, K.F.'s mother, testified that K.F. and Dorinda Comfort called her after the appellant inappropriately touched K.F. Fults, to explain the delay in reporting the offense, stated that she initially believed that it was "just like a brush of the breast." She did not learn the details of the incident until she attended a meeting at the prosecutor's office. Fults stated that after the incident, K.F.'s behavior and grades declined. Fults said K.F. was scared and reluctant to talk. She said K.F. did not fill out a victim impact statement because

she did not want to have to "deal with it" anymore. Fults said that she had met the appellant previously, and, when he gave her a hug, he squeezed her breast.

K.F. testified that she was eleven years old when the offense occurred and that she had never before been inappropriately touched. She said the incident scared her because she did not know what to do after it happened. She said she did not tell her parents because she did not want to talk "about it because I would get nervous and start crying and stuff . . . [and] get[] very, very upset about it." She said that she had seen the appellant at a store which is located in front of her school and that seeing him made her uncomfortable. She said that some people's behavior around her had changed and that being around some people scared her.

Cordell Dykes testified on the appellant's behalf. The seventy-seven-year-old man said he had known the appellant for most of Dykes' life. Dykes owned a plant nursery, and the appellant sometimes worked for him and brought him cuttings. Dykes said the appellant was a hard worker and took care of his wife. Dykes stated that he was concerned about what would happen if the elderly appellant were sentenced to prison.

Mary Joanne Comfort, the appellant's daughter-in-law, testified that the appellant's wife was not in good health and often had anxiety attacks that were "like a stroke." She said the appellant was his wife's primary caretaker. She said the appellant had bad hearing, but he worked everyday, gathering cuttings to sell to nurseries so he could provide for his family. She opined that if the appellant were incarcerated, his wife would be rendered virtually "helpless."

At the conclusion of the sentencing hearing, the trial court imposed an eight-year sentence in the Tennessee Department of Correction. Additionally, based largely upon answers given during the psychosexual evaluation, the trial court found the appellant was not an appropriate candidate for alternative sentencing. On appeal, the appellant contests both the length of the sentence imposed and the denial of alternative sentencing.

## II. Analysis

Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d) (2006). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as

to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should also consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. See Tenn. Code Ann. § 40-35-114 (2006); State v. Carter, 254 S.W.3d 335, 343-44 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343 (quoting Tenn. Code Ann. § 40-35-210(d)). "[A]ppellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence . . . [and are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346.

The appellant acknowledges that the trial court enhanced his sentence upon finding that the appellant had a history of criminal behavior, namely the previous fondling of the victim's mother and the appellant's daughter-in-law. See Tenn. Code Ann. § 40-35-114(1).

However, the appellant complains that the trial court erred in not giving any weight to the mitigating factors he proposed, namely that his conduct neither caused nor threatened serious bodily injury, that his judgment was impaired due to age, and that he did not have a criminal record. See Tenn. Code Ann. § 40-35-113(1), (6), and (13) (2006). Therefore, the appellant challenges the trial court's imposition of an eight-year sentence, a midpoint Range II sentence. See Tenn. Code Ann. § 40-35-112(b)(3) (2006) (providing that a Range II sentence for a Class C felony is not less than six nor more than ten years). In other words, the appellant essentially argues that the trial court incorrectly weighed the enhancement and mitigating factors. However, a disagreement with the weight given to enhancement and mitigating factors is not a ground for reversal of a sentence under the revised sentencing act. Carter, 254 S.W.3d at 345. Accordingly, we conclude that the trial court did not err in imposing an eight-year sentence.

The appellant also contends that the trial court erred in denying him an alternative sentence. An appellant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a) (2006). Generally, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). Tennessee Code Annotated section 40-35-103(1) sets forth sentencing considerations which are utilized in determining the appropriateness of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

See also State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

Initially, we note that as a condition of his plea, the appellant agreed to be sentenced as a Range II offender; therefore, he is not considered a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6). Nevertheless, because the appellant's sentence is eight years, he is still eligible for alternative sentencing.

The trial court found that "a sentence of full probation would unduly depreciate the seriousness of the offense." The court said, "I can't imagine an 11 year old girl having an act like this happen to them and to say that it's not gross or heinous would be incorrect. It is." The court also found that there was a need for deterrence. The court observed that the appellant had intentionally felt the victim's breast and had engaged in similar behavior before, accrediting the testimony of the victim's mother and the appellant's daughter-in-law. The repetitive nature of the appellant's behavior suggests an alternative sentence would be inappropriate. See State v. Hooper, 29 S.W.3d 1, 10-12 (Tenn. 2000) (stating that deterrence is an appropriate consideration when the act is intentional and when the defendant committed similar acts prior, regardless of whether the previous acts resulted in arrest or conviction); Zeolia, 928 S.W.2d at 462 (observing that a multiplicity of offenses can relate to the seriousness of an offense).

The court opined that the appellant lied in his statement to police when he claimed the victim placed his hand on her breast and that the appellant denied responsibility for the offense, both of which reflect poorly on his rehabilitative potential. See State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999). Further, the court found that the appellant gave several disturbing answers to questions during the psychosexual evaluation. Specifically, the court noted that the appellant agreed with the following statements:

> "Sometimes children don't say no to sexual activity because they're curious about it or enjoy it. When kids don't tell that they were involved in sexual activity with an adult it is probably because they liked it." . . . .

> "Sometimes molesters suffer the most, lose the most, or are hurt the most as a result of a sexual assault on a child more than a child suffers or is hurt." . . . .

> "Women who get raped probably deserve it. When a woman gets raped more than once she's probably doing something to cause it." . . . .

The court found that "to have that kind of mentality and having committed this type of offense is unconscionable." Considering all of the foregoing factors, the court found the

appellant's rehabilitative potential was poor. We can find nothing in the record to preponderate against this finding.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE