# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### July 21, 2010 Session

## STATE OF TENNESSEE v. JONATHAN RAY SENDER

### Direct Appeal from the Circuit Court for Rutherford County
### F-62723      Don R. Ash, Judge

---

### No. M2009-01713-CCA-R3-CD - Filed November 8, 2010

---

The Defendant, Jonathan Ray Sender, pled guilty to reckless aggravated assault, with an agreed sentence of four years and the trial court to determine the manner of service. Following a sentencing hearing, the trial court denied the Defendant's request for judicial diversion, and ordered the Defendant to serve thirty days of his four-year sentence in confinement, with the remainder to be served on supervised probation. The Defendant appeals, claiming the trial court erred when it denied him judicial diversion and ordered a sentence of split confinement. After a thorough review of the record and applicable law, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Mitchell E. Shannon, Murfreesboro, Tennessee, for the Appellant, Jonathan Sender.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Benjamin A. Ball, Assistant Attorney General; William C. Whitesell, Jr. District Attorney General; Thomas E. Parkerson, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant's use of a hand-held taser device on a thirteen-

1

year old boy. A Rutherford County grand jury indicted the Defendant for aggravated assault. The Defendant plead guilty to reckless aggravated assault as a Range I, standard offender. The Defendant agreed to a four-year sentence, reserving the determination of the manner of service for the trial court.

Because the record does not include a transcript of the plea hearing, we rely upon the sentencing hearing transcript as to the facts of this case. The following evidence was presented at the Defendant's sentencing hearing: Tony Taylor, a Rutherford County Sheriff's Department deputy, testified that he was dispatched to investigate an assault incident. Deputy Taylor recalled that initially the Defendant denied any part in the incident but later admitted that he showed a hand-held taser device to neighborhood children. The taser device belonged to the Defendant's mother who used it "for home protection." The Deputy described how a taser device looked and worked and said that the use of a taser device "incapacitates" the person upon whom it is used. The Deputy said that the effect of a taser device can vary depending upon the person's age and physical capacity.

After speaking with the Defendant, the Deputy spoke with multiple witnesses to the incident, including the victim and the victim's mother. Deputy Taylor recalled that the victim's mother seemed "upset" and that the victim was "excited" and told the Deputy that he had been "tased" on his arm. The Deputy observed two marks on the victim's arm, but the victim's mother declined the Deputy's offer to call for an ambulance. The victim's mother wrote out the victim's statement of the incident, explaining to Deputy Taylor that the victim was a "special needs" child. The Deputy read the victim's statement aloud at the sentencing hearing: "[The Defendant] came out and he started chasing me with a taser. He was holding it against me while I was lying on the ground and he held the back end against me and let out the electricity. And I felt an electric shock."

The Deputy testified that another deputy took down statements from two witnesses, Jennifer Acuna and Regina Scott. These statements were introduced into evidence at the hearing. The statement from Acuna, the victim's neighbor, read:

> I was sitting on my front porch when I heard a noise. A neighbor kid came over and said to not let my kids go to the cul-de-sac. I saw [the Defendant] chasing [the victim] around aiming the ta[s]er at him. [The victim] fell on the ground and [the Defendant] continued to aim the ta[s]er. At that point I went inside to call the police and was informed by my son the police had already been notified.

Scott, another witness to the incident, made the following statement regarding the incident:

2

I saw the [Defendant] scaring the kids with a ta[s]er gun on Tetanka Ct. where they were all out playing basketball. Then [the victim] fell to the ground as if he had been hit. [The Defendant] went over as if to ta[s]e him again -Twice-. Then that is when I called police. I was afraid for [the victim] and the other children, my grandson []too.

The Deputy spoke with the Defendant's mother, and she said that "she didn't witness anything."

Teresa Coombs, the victim's mother, testified that the victim was thirteen years old at the time of this incident. She said that the victim was on several medications for medical issues such as asthma, bipolar depression, panic anxiety disorders, and attention deficit hyperactivity disorder. Coombs testified that, since the event, the victim is "very fearful" and cannot sleep at night, waking every hour. She said he is afraid to go near the Defendant's house, and, when he sees the Defendant, he moves away from him. Coombs said that she wanted "the fullest extent of the law" used in this case because the taser could have killed her son.

On cross-examination, Coombs agreed that her son is also diagnosed with Tourette's Syndrome. Coombs agreed that she did not take the victim to the emergency room after this incident and that she did not photograph the resulting marks on the victim's body. Coombs acknowledged that she did not witness the incident.

Marilyn Rainey, who works for the State Board of Probation and Parole, testified that she prepared the Defendant's presentence report. Rainey found that the Defendant had a pending warrant in Georgia. Upon contacting the clerk's office in Georgia, she learned that the warrant was based upon a probation violation for the Defendant's failure to report and pay unpaid fees and fines. The underlying charge for the violation was for a second violation of the window tint law.

Regina Sender, the Defendant's mother, testified that she and the Defendant's fiancé were cooking in the kitchen when she looked out the window and noticed police officers speaking with the Defendant. Sender went outside, and the police officers informed her the Defendant was accused of using a taser device on a neighborhood child.

Sender testified that her son was twenty years old, lived with her, and worked twelve hour shifts at a bread company. Sender testified that her son cooperated with police and gave the officers the taser device. Sender explained that the Defendant asked her if he could take the taser device outside. She watched him walk outside, hold it up in the air, and "zap" it twice. She said he then put it back in the case and brought it back inside. Sender said

that, based upon his interaction with other children, she did not believe that the Defendant used the taser device on the boy. Sender acknowledged that the Defendant had a juvenile record and had done "a lot of crazy stuff" but said he had "never tried to hurt someone's child." Sender said that, since the incident, she had observed the victim playing in the cul-de-sac near her home.

Lacey Jean Oller, the Defendant's fiancé, testified that, since the incident, she had seen the victim playing basketball in the street near the Defendant's home. She said that when the victim sees the Defendant, "He'll put his head down and then look up and wave." Oller stated that she has never known the Defendant to deliberately try to injure someone.

Jennifer Osborn testified that she had known the Defendant since he was twelve years old and described him as "the sweetest young man [she had] ever had the pleasure of knowing." Osborn said that the Defendant did not use the taser gun on the victim and that the Defendant should not be ordered to serve time in jail for this incident.

Mark Henderson, a neighbor, testified that he spoke with the victim approximately two weeks after the incident. Henderson recalled that the victim and another boy were at Henderson's house to see Henderson's son. "And I asked him at that time about what had happened. And I told–I said I don't believe that [the Defendant] did this. I said, you know, you're not telling the truth, are you. And it was like, yes, sir, and put their heads down." Henderson said that he had known the Defendant for "at least ten years" and the Defendant had helped him with home projects "from time to time." Henderson said that he believed that the Defendant should not serve time in jail for an event that "didn't happen."

On cross-examination, Henderson acknowledged that he was not present during the incident.

During the hearing, the trial court asked whether the Defendant was seeking judicial diversion, defense counsel responded that it was requested as an alternative but he had not received the application back from the Tennessee Bureau of Investigation ("TBI").

Following the hearing, the trial court first addressed the issue of judicial diversion finding that there was not an application for diversion returned from the TBI certifying the Defendant as qualified for judicial diversion. The trial court next found that the Defendant was not a good candidate for probation, based upon the circumstances of the criminal conduct, and the Defendant's criminal record, which included a violation of a probated sentence. The trial court ordered the Defendant to serve thirty days of the four-year sentence in confinement with the remainder to be served on supervised probation. It is from this judgment that the Defendant now appeals.

4

## II. Analysis

The Defendant argues that the trial court erred in denying his request for judicial diversion and that it erred in ordering split confinement rather than a fully probated sentence. The State responds that the trial court's sentencing determinations should be presumed correct because the Defendant failed to include the plea hearing transcript in the record, thus failing to supply this Court with a complete record. The State further asserts that, based on the record before this Court, the trial court correctly sentenced the Defendant.

### A. Judicial Diversion

When a defendant challenges the denial of judicial diversion, we review the trial court's decision under an abuse of discretion standard. *State v. Cutshaw*, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997). We must conclude that "no substantial evidence exists to support the ruling of the trial court" if we are to grant the Defendant relief. *Id.*

Where a defendant is eligible for judicial diversion, a judge has the discretion to defer proceedings without entering a judgment of guilty. T.C.A. § 40-35-313(a)(1)(A) (2009). Following a grant of judicial diversion, the defendant is on probation but is not considered a convicted felon. T.C.A. § 40-35-313(a)(1)(A). To be eligible for judicial diversion, a defendant must be a "qualified defendant" as defined by the Tennessee Code section governing judicial diversion:

> (B)(i) As used in this subsection (a), "qualified defendant" means a defendant who
>
> (a) Is found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;
>
> (b) Is not seeking deferral of further proceedings for a sexual offense, a violation of § 71-6-117 or § 71-6-119 or a Class A or Class B felony; and
>
> (c) Has not previously been convicted of a felony or a Class A misdemeanor.

T.C.A. § 40-35-313(a)(1)(B)(i) (2009). A certification from the Tennessee Bureau of Investigation is required to confirm that the defendant does not have a prior felony or Class A misdemeanor. T.C.A. § 40-35-313(a)(3)(A) (2009).

In the case under submission, the trial court found that it had no record of the TBI's certification that the Defendant did not have a felony or Class A misdemeanor as required

5

by statute. Based on the absence of such a certification, it did not consider judicial diversion. Without this certification that verifies the Defendant is eligible, the trial court could not grant judicial diversion. Defense counsel agreed with the trial court at the sentencing hearing that there was not a certification, and there is not one in the appellate record. The Defendant asserts that absent the TBI certification, a trial court should still make inquiry into the defendant's eligibility for judicial diversion. The Defendant argues that, if there is nothing to indicate the defendant would otherwise not be eligible, then the trial court should request a TBI certification. In our view, a defendant who is seeking judicial diversion bears the burden of showing the trial court that the defendant is in fact statutorily qualified for judicial diversion. Unless a defendant is qualified, further determinations by the trial court on the issue of granting or denying judicial diversion is pointless.

The Defendant claims that he requested a continuance from the trial court in order to obtain the TBI certification, however, the record does not contain this request or the trial court's response to the request. Accordingly, we conclude that the trial court's ruling is not in error. The Defendant is not entitled to relief on this issue.

### B. Split Confinement

The Defendant argues that the trial court erred in ordering a sentence of split confinement rather than a fully probated sentence.

After the evidence was presented at the sentencing hearing, the trial court sentenced the Defendant to serve thirty days in jail followed by supervised probation for the remainder of the four years. The trial court imposed several conditions as part of the Defendant's probation, including ordering the Defendant to complete his G.E.D., pay court costs, and stay away from the victim and the victim's family.

When a defendant appeals the manner of service of a sentence imposed by the trial court, this Court conducts a *de novo* review of the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006). The presumption of correctness, however, is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the appealing party to show that the sentence is improper. T.C.A. § 40-35-401(d), Sentencing Comm'n Cmts. Thus, if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration to the factors and principles relevant to sentencing based upon the Sentencing Act, we may not disturb the sentence even if a different result were preferred. *State v. Fletcher*, 805 S.W.2d 785, 789

(Tenn. Crim. App. 1991).

Factors to be considered when a trial court is determining whether incarceration is appropriate are: (1) whether confinement is necessary to protect society by restraining a defendant with a long history of criminal conduct, (2) whether confinement is need to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses, and (3) whether measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. *Ashby*, 823 S.W.2d at 169. *See* T.C.A. § 40-35-103(1)(A)-(C)) (2006). A trial court should also consider a defendant's potential or lack of potential for rehabilitation. T.C.A. § 40-35-103(5) (2006).

As the State notes, any evidence presented at the guilty plea hearing should be considered in determining whether a sentence is appropriate, and the Defendant failed to include a transcript of the guilty plea hearing in the appellate record. *See* T.C.A.. § 40-35-210(b)(1) (2006). It is the duty of the defendant to prepare a fair, accurate, and complete record on appeal to enable meaningful appellate review. Tenn. R. App. P. 24. Failure to include the transcript of the guilty plea hearing in the record prohibits this Court from conducting a full de novo review of the sentence under Tennessee Code Annotated section 40-35-210(b).

Nonetheless, the record before us supports the trial court's determinations relative to the circumstances of the criminal conduct and the Defendant's inability to comply with the requirements of previously ordered probated sentences. The trial court addressed the gravity of an adult using a taser gun on a thirteen-year old special needs child. The trial court went on to find that a full sentence of probation would neither serve the best interests of the public nor deter others likely to commit similar crimes. In an attempt to help motivate the Defendant toward rehabilitation, the trial court found that a period of incarceration was necessary. The Defendant, at the time of the sentencing hearing, had an outstanding warrant in another state for his failure to comply with probation requirements. This demonstrates that the Defendant has poor potential for rehabilitation, which is sufficient to justify a term of incarceration rather than an alternative sentence. *State v. Zeolia*, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996). The trial court, in its order, listed the evidence and the applicable factors it considered in denying an alternative sentence. The trial court considered the sentencing principles and all relevant facts and circumstances. *See State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). Therefore, we conclude that the Defendant has failed to show that the trial court erred by ordering a sentence of split confinement. The Defendant is not entitled to relief as to this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we conclude the trial court did not err when it denied judicial diversion and imposed a sentence of split confinement. As such, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE